## STORY *v.* UNITED LIFE & ACCIDENT INS. ASS'N.

*(Supreme Court, General Term, Second Department.  February 11, 1889.)*

INSURANCE—APPLICATION—FALSE REPRESENTATIONS.

A life insurance policy provided that a false representation by the insured should avoid the policy.  In answer to questions, insured stated in his application that his

health was then and usually good. He showed the medical examiner a pimple on his tongue, stating that it was not serious. The physician made only a cursory examination, and discovered no indications of disease. For two or three years there had been symptoms of cancer, and the insured consulted two physicians before applying for the policy. Shortly after it was issued he procured medical treatment, underwent an operation, and died. *Held*, in an action on the policy, that the evidence so fully established the breach of warranty that a nonsuit should be directed.[1]

Appeal from circuit court, Kings county.

Action by Thomas H. Story, executor, etc., of William H. Story, deceased, against the United Life & Accident Insurance Association, on a policy of insurance issued to plaintiff's testator. At the trial a nonsuit was ordered, and plaintiff appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Jerry A. Wernberg*, (*George G. Reynolds*, of counsel,) for appellant.  *Harry Wilbur*, (*S. W. Fullerton*, of counsel,) for respondent.

BARNARD, P. J.  William H. Story, deceased, on the 9th of February, 1886, took out a policy of insurance in defendant's association. Among the questions put to him by the company as a basis for the issuing of the policy was one as follows: "Are you in good health, and is your health usually good?" The deceased answered this question, "Yes." The policy provides that the answer is a warranty, and avoids the policy if not true. It appears, when this application was signed, the deceased stated that he had a pimple on his tongue, and had been told by a physician that "it was not serious." He showed the tongue to the defendant's medical examiner, who discovered no indication of disease. He stated to him where the pimple had been, but added: "It is all gone now." The examiner looked at the top of the tongue, and made no further examination. For two or three years it appears there had been a peculiar appearance of the deceased's tongue. At times it exhibited a whitish covering, and at other times a red appearance. The deceased had applied and received medical advice in respect to it for nearly a year before a policy was issued. The trouble gave him apprehension after the policy was issued, and on the 18th day of May, 1886, he sailed for Europe for further advice, and while in London, in August, 1886, a surgeon cut out his tongue for the disease. He returned home again. On the 1st of November, 1886, he died. Assuming that it was improper to ask the physician what they prescribed for the deceased, the evidence clearly establishes that this trouble with the tongue antedated for many months the issuing of the policy. The deceased told his business associate that he was advising with Dr. Rupponer about it before the date of the policy. He had advised with Dr. Arkinson about it also before the policy was issued. He continued to receive medical aid between the date of the policy and the voyage to Europe for the same trouble. There is no contradictory proof, and a submission to the jury of the question of disease would only be proper if different deductions could be drawn from the evidence. In other words, could the jury infer that this disease did not exist on the 9th of February, 1886? It is proven that a cancer may develop and determine within a few weeks, but with the proof that the tongue trouble existed for months before the policy, and continued constantly after, only growing in its danger until surgery had to be called in, there can be but one just inference from the testimony. The deceased was ignorant of any falsity in his answer, but he had a disease upon him marked and considerably advanced towards the end. The nonsuit was therefore right, and the judgment should be affirmed, with costs. All concur.

[1] Respecting false representations as to health and habits in applications for life insurance, as avoiding the policy, see Numrich v. Lodge, 3 N. Y. Supp. 552, and cases cited.