### PHILLIPS v. NEW YORK LIFE INS. CO.

*(Supreme Court, General Term, First Department.* May 9, 1890.)

LIFE INSURANCE—APPLICATION—MISREPRESENTATIONS.

    A life insurance policy made the statements in the application part of the contract. The application warranted the answers "to be full, complete, and true." In answer to the question as to who was his usual medical attendant, the assured answered, "Dr. S.," and he was then asked when, and for what, his services had been required, and he answered, for his family. In an action on the policy, the evidence showed that the only medical attendant of the assured for a year prior to his death, which occurred less than three months from the application, was one W.; and there was no evidence that S. ever attended him. *Held,* that there was such a breach of warranty as would avoid the policy. BRADY, J., dissenting.

Appeal from circuit court, New York county.

Action by Eleanor C. Phillips against the New York Life Insurance Company. There was a judgment in favor of defendant, dismissing the complaint

on its merits, and an order denying a motion for a new trial; and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*F. M. Hardenbrook,* for appellant.    *Hornblower & Byrne,* for respondent.

VAN BRUNT, P. J.    This action was brought by the plaintiff, as widow of one Arthur C. Phillips, to recover the amount of an insurance upon the life of said Phillips, alleged to have become due upon a policy, issued by the defendants, payable to the plaintiff.    In July, 1887, the said Phillips had signed an application for an insurance, and in connection therewith made certain statements and representations which, by the terms of the agreement, he warranted to be full, complete, and true, and that, if any of them should in any respect be untrue, the policy which might be issued upon the application should be void.    This application contained certain other provisions upon which questions have been raised upon this appeal, but which it is not necessary for us to consider, in view of the conclusion to which we have come in reference to questions raised as to the breach of warranty.    Various questions were contained in this application inquiring as to whether the applicant had had any of various diseases or complaints therein named, or was subject or predisposed to various diseases therein named, to all of which he answered, "No."    He was also asked the name and residence of his usual medical attendant.    His answer was: "Dr. Lewis H. Sayre."    He was further interrogated as to when, and for what, his services had been required; and his answer was: "Family."    The printed blank contained this question: "Have you consulted any other medical man?    If so, when, and for what?"    which does not appear to have been answered.    The policy of insurance upon which this action is founded was issued upon this application.    It provided that, "if any of the statements or representations made in the application for this policy shall be found in any respect untrue, then, and in every such case, this policy shall be null and void, and all payments previously made shall be forfeited to the company, and no action or right of action shall remain to, or be maintained against this company by, the assured or any other person by virtue of this policy."    After the death of the insured, proofs of death were furnished to the company on behalf of the plaintiff, as required by the policy.    In answer to the question as to the name and address of every physician who attended the deceased within a year prior to his death, the plaintiff answered: "Philip M. Wood, Jamaica, N. Y., and J. M. Schley, 1 East Forty-Second street, New York."    Annexed to the statement made by the plaintiff was a statement signed by the said Dr. Wood pursuant to the requirements of the policy.    In this statement, Dr. Wood asserted that he had been the medical attendant and adviser of the deceased for one year.    The plaintiff was called as a witness on her own behalf, and was asked whether Dr. Sayre had attended her as her family physician, and her answer was: "Well, no; I should never call him my family physician.    He has attended me several times.    I do not remember if he attended Mr. Phillips in his life-time.    I do not remember that Mr. Phillips ever called upon Dr. Sayre, or that Dr. Sayre attended him, except that he vaccinated us.    So far as I know, Dr. Sayre had not attended him within a year prior to the issuing of this policy.    My knowledge extends back for a year before.    He had not attended him, to my knowledge; I know that he had not.    I do not know as to two years.    I know Dr. Phillip H. Wood, of Jamaica.    He had attended me during 1887, as a family physician.    He had attended and prescribed for my husband during 1887.    I could not say positively what portion of the year.    It was in July, and before that; but I do not remember the month.    It was in July, and subsequently; but, I think, not in August.    I do not remember how many times he attended him in July.    He called occasionally.    Dr. Sayre did attend me and my husband and family for very slight occasions.    I never considered him my

family physician. I have been to him for very slight ailments. He was known to me and my husband very well. Dr. Wood was my mother's family physician." So that it appeared from the evidence of the plaintiff that Dr. Sayre was not the family physician of the deceased, and that Dr. Wood, prior to the time of the application for this policy, was his medical attendant. It was claimed upon the trial, upon the part of the defendant, that this showed a breach of warranty in reference to the questions which have been hereinbefore stated, and the court so held, and dismissed the complaint; and, a motion having been made for a new trial and denied, from the judgment thereupon entered, and from the order denying a new trial, this appeal is taken.

Upon the point which has been suggested for discussion, the principal argument upon the part of the appellant is that the affidavit of Dr. Wood was inadmissible as evidence against the plaintiff. It is undoubtedly true that Dr. Wood could not directly or indirectly give evidence as to facts which he had learned as the family physician of the deceased; and, if the statement made by him was to be treated as a declaration of his, it was necessarily excluded as being contrary to the provisions of the Code in respect to knowledge obtained by physicians in the course of their practice. But this was not necessarily received as a declaration of Dr. Wood; but it was received as a statement upon the part of the plaintiff, to the company, of facts which have been sworn to by Dr. Wood. The plaintiff presented this proof of loss in accordance with the requirements of the terms of the policy, and she has declared, by the presentation of this claim, these to be the facts, and these to be the answers, which Dr. Wood has made to these questions; and they are to be treated as declarations upon the part of the plaintiff which are to be received as evidence against her *prima facie*, but which are not necessarily conclusive. This seems to be the view taken by the United States supreme court in the case of *Insurance Co.* v. *Newton*, 22 Wall. 32; *Same* v. *Higginbotham*, 95 U. S. 380. In that case the parties sought to except from the evidence introduced upon the trial the affidavit of Dr. White, the physician who attended the deceased in his last illness, and the court required that the proofs of loss should be put in as an entirety; that is, that all the papers containing the preliminary proofs should be put in evidence, including the affidavit of Dr. White. This ruling was held to be correct. The theory upon which they were received was that, these papers being presented under the name of the assured, and constituting the essential preliminaries to her action, they must stand as her acts, and the representations made therein must be taken as true until at least some mistake is shown to have occurred in respect to them. The case of *Goldschmidt* v. *Insurance Co.*, 102 N. Y. 486, 7 N. E. Rep. 408, in no way conflicts with this view, because the statement as to the coroner's inquest in that case formed no part of the necessary proofs of death, as such proofs were in all respects complete without this statement, and the statements therein contained were neither sworn to, nor presented as worthy of belief. Upon the contrary, their truthfulness was expressly denied; and for this reason it was held that the principles laid down in the case of *Insurance Co.* v. *Newton*, above cited, in no way conflict with the conclusion at which the court had arrived. The question then arises whether it was shown that there has been a breach of the warranty. The assured represented to the insurance company, in his application, that the name and residence of his usual medical attendant was Dr. Sayre, and that his services had been required for his family. As to the question which remained unanswered, it seems to me that this case must be treated as though that question were not contained in the application; no answer having been made thereto. It was not embraced within the terms of the warranty; and the question of the breach of the warranty is to be governed by the questions which have been asked and answered, and not by those which it is presumed have not been asked, and therefore not answered. The evidence shows that, for a year prior to the death of the deceased, which

occurred less than three months from the time of the application for the policy, Dr. Wood had been his medical attendant, and that Dr. Sayre had not attended him during these periods, and that, according to the testimony of the plaintiff, Dr. Sayre was not their family physician. Under these circumstances, it would appear that there had been a direct and complete breach of warranty, and that nothing was left for the court to do except to dismiss the complaint. The claim that the answer that Dr. Sayre was the family physician was not responsive, because the question calls for the date, and for what the services were required, does not seem to meet the question. The witness had been asked who his usual medical attendant was, and he said: "Dr. Sayre." Then he was asked when, and for what, his services had been required, and he answered, for his family, which involved the implied assertion that such services had not been required at all for himself, and that he considered him his usual medical attendant. Having had no occasion for a physician for himself, Dr. Sayre had attended his family.

It is urged that there is no evidence that the plaintiff or deceased ever regarded Dr. Wood as their family physician, or that he was their family physician. That may be entirely true, but the evidence shows conclusively that Dr. Sayre was not the usual medical attendant of the deceased. It appears that the only physician he had had for a long period of time anterior to the issuing of the policy had been Dr. Wood; and there is no evidence that Dr. Sayre had been accustomed to prescribe for the deceased, so that he became his usual medical attendant, and that Dr. Wood was merely an occasional visitant. There was no ground whatever upon which the jury could possibly find that Dr. Sayre, under such circumstances, was the usual medical attendant of the deceased. The proof in the case had raised a presumption of a different kind; and it would require further evidence than was introduced on the part of the plaintiff to show that Dr. Sayre could be considered by anybody as the usual medical attendant of the deceased, in view of the fact that the only physician who was shown to be in attendance upon him was Dr. Wood.

In the discussion of this case, it seems to us that the question as to whether Dr. Wood or Dr. Sayre was the family physician of the deceased is a side issue, and has very little to do with the breach of this warranty. It is the first question which has come up for discussion which is the crucial point in respect to the breach of warranty. The deceased had represented that Dr. Sayre was his usual medical attendant, while the evidence shows that his only medical attendant, certainly for a year prior to his death, was Dr. Wood; and there is no evidence at all that Dr. Sayre ever attended him. It is idle to say that under these circumstance a jury might find, in the face of the proof, that Dr. Sayre was his medical attendant, when it did not appear that Dr. Sayer had ever attended him, and it did appear that other persons had been his physicians. It is not a question as to what the deceased considered. His views cannot change the fact. If Dr. Jones is attending a person, and that person says that he considered Dr. Smith, who never attended him, his usual medical attendant, that did not make him such. It would appear from the evidence of the plaintiff that Dr. Sayre had not been his usual medical attendant, and that other physicians were the persons who had been accustomed to attend the deceased. Under these circumstances, it seems to us that the court was right in dismissing the complaint, that there was a plain breach of warranty, and that the jury should not have been allowed to find a verdict as against this weight of evidence.

The other questions raised it does not seem necessary to consider, as the point discussed seems to be fatal to the right of recovery, and fully authorized the court to dismiss the complaint. The judgment and order appealed from should be affirmed, with costs.

DANIELS, J., concurs.

BRADY, J., (*dissenting.*)   Whether Dr. Sayre was the usual medical attendant of the assured, according to the ordinary sense of that designation, I think, should have been submitted to the jury.   I dissent, therefore.