ELIZABETH HANNA, Respondent, *v.* MUTUAL LIFE ASSOCIATION of the City of Brooklyn, N. Y., Appellant.

*Life insurance — proof as to the attending physician and the past health of the insured.*

What proof as to the breach of a warranty in a policy of insurance, as to who was the attending physician, and what was the past good health of the insured, will require the reversal of a judgment in favor of the beneficiary, considered.

APPEAL by the defendant, the Mutual Life Association of the City of Brooklyn, N. Y., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 14th day of April, 1896, upon the verdict of a jury rendered after a trial at a Trial Term of the Supreme Court held in and for the county of Albany, and also from an order entered in said clerk's office on the 9th day of June, 1896, denying the defendant's motion for a new trial made upon the minutes.

*Salisbury & Ward*, for the appellant.

*F. B. Delehanty*, for the respondent.

PARKER, P. J. :

The action is brought upon a policy of insurance issued by the defendant to Edward Hanna upon his life, for the benefit of his wife, the plaintiff in this action.

Payment is resisted upon the ground that Edward Hanna, at the time he made application for the insurance, falsely warranted, among other things, that Dr. Zeh, the physician who certified to the condition of his health on such application, was his attending physician; that he had not been prescribed for or attended by any other physician within four years then last past; that for the year then last past he had been in good health and free from all disease and infirmities; that he had not during five years then last past had any disease, illness or injury that affected his constitution, and that he had never had any illness, local, constitutional, mental or nervous disease, injury or infirmity. There is no dispute but that he made such warranties. The question is, whether either of them is false. The application was made and the policy issued in February, 1892, and the insured died on August 7, 1893, his death being caused by urethral fistula. It is claimed by the plaintiff that deceased fell and "struck on the wagon box between his legs" on July 30, 1892, and that the injury so received resulted in the fistula that caused his death. The only proof that he did so hurt himself on that date is the evidence of the plaintiff, who testified that on that date deceased came home complaining and told her that he fell in that way. It is to be noticed that she does not distinctly say that he told her he had fallen on *that* day. The plaintiff further testified that on August 4, 1892, he stopped work entirely. Soon after that Dr. O'Brien began to treat him, operating upon an abscess in the perineal region; and Dr. Bontecou testifies that he first saw him on August 15, 1892, and that he was then suffering from urinary difficulty and stricture of the urethra. From that time he continued to grow worse, and although an operation was performed in December, 1892, at the Albany Hospital, it failed to cure him, and he died in the following August.

It is claimed by the defendant that the injury which caused the stricture was in fact received some years before the application was made; that the insured at that time was, and for some years before had been, afflicted with a stricture, which was gradually becoming

worse and which developed into the one treated by Drs. O'Brien and Bontecou in August, 1892, and which was the cause of the fistula that ultimately caused his death, and that, therefore, the warranty as to his freedom from injury or infirmity was a false one.

I cannot resist the conclusion that the defendant's claim in this respect is correct. Defendant's witness Fetting testified that about six years before the trial, which would be in 1890 or thereabouts, the deceased fell astride of the edge of a wagon box and hurt himself so that he stopped work for a couple of days. In this respect he is contradicted by the plaintiff, who denies that her husband then complained, and by the witness McBain, who does not think deceased was absent from work at that time. The daughters of deceased also testify that he was always in good health. Alone by itself this evidence of Fetting's would not be very forceful. But Dr. McNaughton testified that in 1891 he was called to see deceased and found him suffering from a swelling between the scrotum and rectum about the size of a large walnut. That he detected no appearance of a recent injury. It was a red and inflamed swelling. He told him to keep quiet and gave him something to apply to it. When he called the next day it was better. In this statement Dr. McNaughton is contradicted by the plaintiff, but why should her statement rather than the doctor's be believed? There is no apparent reason why he should be discredited. He seems entirely disinterested; was a friend of the family and his attending physician during deceased's last illness. I do not think that his statements as attending physician made in the proofs of death contradict the fact so testified to by him. They indicate that he did not at that time connect the swelling found in 1891 with the fistula, or look upon such swelling as a disease or an injury or infirmity, but they do not discredit the statement that in 1891 he treated deceased for a swelling in that region. I think we must conclude that in 1891 such a swelling did exist.

It also appears from the testimony of plaintiff that in five or six days after she claims that the deceased was injured, Dr. O'Brien discovered an abcess there, and in about ten days thereafter, viz., August 15, 1892, it appears from Dr. Bontecou's evidence that he discovered a stricture of the urethra that was of long standing, and that the parts exhibited no evidence whatever of recent injury. Afterwards, in December, 1892, at the time of the operation in the hospital in Albany,

it was stated in deceased's presence, in an exhibition of his case to the medical class, that the stricture was the result of an injury received about five years before. While I do not give much effect to this evidence as an admission by the deceased, it is significant as being the medical diagnosis of the trouble, and also that in some way at *that time* a statement was made concerning his case which corroborates the statement made by the witness Fetting. Now, all these facts force upon us the conclusion that the stricture was not the result of an injury so recent as July 30, 1892, but that it must have been one of long standing, and existing at the time the application and warranty were made by deceased. And there is no evidence to dispute these facts or repel that conclusion, except the evidence of the interested members of his family and of a few personal friends, that the deceased always seemed healthy prior to July 30, 1892. Upon that subject the medical evidence is that deceased might have been suffering from such a stricture and yet have appeared to the casual observer to be in good health. Hence, such appearance is of little force to overcome the conclusion that the stricture existed at the time of the warranty, and if such stricture did exist, and was troubling deceased in 1891, when Dr. McNaughton first saw the swelling in that locality, there was a clear breach of the warranty that he had never had any "local * * * injury or infirmity." (*Story* v. *U. L. & A. Ins. Assn.*, 4 N. Y. Supp. 373; 125 N. Y. 761.)

In addition to this, the deceased stated in his application that Dr. Zeh, of West Troy, was his "attending physician," and that no other had prescribed for or attended him within the last four years. Both of these statements seem to have been untrue. Dr. Zeh never had been his "attending physician," and that Dr. McNaughton had attended and prescribed for him within four years seems so clear that we cannot disregard it.

If Dr. Zeh was not his attending physician, and there is really no dispute but that he never had been, it would seem that such false statement in itself was sufficient to avoid the policy. It was a very material statement, for Dr. Zeh was the examining physician who certified that the applicant was insurable, and the defendant would naturally put more reliance upon the opinion of a physician familiar with the physical condition of the deceased as his attending phy-

sician than upon the opinion of one who was not. (See *Phillips* v. *N. Y. Life Ins. Co.*, 9 N. Y. Supp. 836.)

Upon the whole case we conclude that the evidence against the truth of such warranties on the defendant's part is so preponderating that this verdict should not be allowed to stand.

We, therefore, reverse the judgment and order and grant a new trial, costs to abide the event.

HERRICK and PUTNAM, JJ., concurred; LANDON and MERWIN, JJ., dissented.

Judgment and order reversed and a new trial granted, costs to abide the event.