## HANNA v. MUTUAL LIFE ASS'N OF CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

INSURANCE—AVOIDANCE OF POLICY FOR MISREPRESENTATIONS.

    Warranties by an insured that he had never had any local injury or infirmity, and that a certain physician was his attending physician, avoid a policy, where the insured had suffered four years prior to the representation with a disease, and the physician named had never been his attending physician. Landon and Merwin, JJ., dissenting.

Appeal from trial term, Albany county.

Action by Elizabeth Hanna against the Mutual Life Association of the City of Brooklyn on a policy of insurance. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Salisbury & Ward, for appellant.

F. B. Delehanty, for respondent.

PARKER, P. J. The action is brought upon a policy of insurance issued by defendant to Edward Hanna, upon his life, for the benefit of his wife, the plaintiff in this action. Payment is resisted upon the ground that Edward Hanna, at the time he made application for the insurance, falsely warranted, among other things, that Dr. Zeh, the physician who certified to the condition of his health, on such application, was his attending physician; that he had not been prescribed for or attended by any other physician within four years then last past; that for the year then last past he had been in good health, and free from all disease and infirmities; that he had not during five years then last past had any disease, illness, or injury that affected his constitution, mental or nervous disease, injury, or infirmity. There is no dispute but that he made such warranties. The question is whether either of them is false. The application was made and policy issued in February, 1892, and the insured died on August 7, 1893, his death being caused by urethral fistula. It is claimed by the plaintiff that deceased fell and "struck on the wagon box between his legs," on July 30, 1892, and that the injury so received resulted in the fistula that caused his death. The only proof that he did so hurt himself on that date is the evidence of the plaintiff. who testified that on that date deceased came home complaining, and told her that he fell in that way. It is to be noticed that she does not distinctly say that he told her he had fallen on that day. The plaintiff further testified that on August 4th he stopped work entirely. Soon after that, Dr. O'Brien began to treat him, operating upon an abscess in the perineal region; and on August 15, 1892, Dr. Bontecou testifies that he first saw him, and that he was then suffering from urinary difficulty and stricture of the urethra. From that time he continued to grow worse, and although an operation was performed in December, at the Albany Hospital, it failed to cure him, and he died in the following August.

It is claimed by the defendant that the injury which caused the stricture was, in fact, received some years before the application was made; that he at that time was, and for some years before had been, afflicted with a stricture, which was gradually becoming worse, and which developed into the one treated by Drs. O'Brien and Bontecou in August, 1892, and which was the cause of the fistula that ultimately caused his death; and that, therefore, the warranty as to his freedom from injury or infirmity was a false

one. I cannot resist the conclusion that the defendant's claim in
this respect is correct. Defendant's witness Fetting testified that
about six years before the trial, which would be in 1890 or there-
abouts, the deceased fell straddle of the edge of a wagon box, and
hurt himself, so that he stopped work for a couple of days. In
this respect he is contradicted by the plaintiff, who denies that her
husband then complained, and by McBain, who does not think de-
ceased was absent from work at that time. The daughters of de-
ceased also testify that he was always in good health. Alone by it-
self, this evidence of Fetting would not be very forceful. But
Dr. McNaughton testified that in 1891 he was called to see de-
ceased, and found him suffering from a swelling between the scro-
tum and rectum, about the size of a large walnut; that he detected
no appearance of a recent injury. It was a red and inflamed swell-
ing. He told him to keep quiet, and gave something to apply to
it. When he called the next day, it was better. In this statement,
Dr. McNaughton is contradicted by the plaintiff; but why should
her statement, rather than the doctor's, be believed? There is no
apparent reason why he should be discredited. He seems entirely
disinterested, was a friend of the family, and his attending physician
during deceased's last illness. I do not think that his statements
as attending physician made in the proofs of death contradict the
fact so testified to by him. They indicate that he did not at that
time connect the swelling then found with the fistula, or look upon
it as a disease or an injury or infirmity, but they do not discredit
the statement that in 1891 he treated deceased for a swelling in
that region. I think we must conclude that in 1891 such a swell-
ing did exist.

It also appears from the testimony of plaintiff that, in five or
six days after she claims deceased was injured, Dr. O'Brien dis-
covered an abscess there; and in about 10 days thereafter, viz.
August 15, 1892, it appears from Dr. Bontecou's evidence that he
discovered a stricture of the urethra that was of long standing, and
that the parts exhibited no evidence whatever of recent injury.
Afterwards, in December, at the time of the operation in the hos-
pital in Albany, it was stated in deceased's presence, in an exhibi-
tion of his case to the medical class, that the stricture was the
result of an injury received about five years before. While I do
not give much effect to this evidence as an admission by the de-
ceased, it is significant, as being the medical diagnosis of the trou-
ble, and also that in some way at that time a statement was made
concerning his case, which corroborates the statement made by
the witness Fetting. Now, all these facts force upon us the con-
clusion that the stricture was not the result of an injury so recent
as July 30, 1892, but that it must have been one of long standing,
and existing at the time the application and warranty were made
by deceased; and there is no evidence to dispute these facts or
repel that conclusion, except the evidence of the interested mem-
bers of his family, and of a few personal friends, that the deceased
always seemed healthy prior to July 30, 1892. Upon that subject
the medical evidence is that deceased might have been suffering

from such a stricture, and yet have appeared to the casual observer in good health.   Hence such appearance is of little force to overcome the conclusion that the stricture existed at the time of the warranty; and if such stricture did exist, and was troubling deceased in 1891, when Dr. McNaughton first saw the swelling in that locality, there was a clear breach of the warranty that he had never had any "local injury or infirmity."   Story v. Insurance Co. (Sup.) 4 N. Y. Supp. 373; Id., 125 N. Y. 761, 27 N. E. 408.

In addition to this, the deceased stated in his application that Dr. Zeh, of West Troy, was his "attending physician," and that no other had prescribed for or attended him within the last four years. Both of these statements seem to have been untrue.   Dr. Zeh never had been his "attending physician," and that Dr. McNaughton had attended and prescribed for him within four years seems so clear that we cannot disregard it.   If Dr. Zeh was not his attending physician,—and there is really no dispute but that he never had been,—it would seem that such false statement in itself was sufficient to avoid the policy.   It was a very material statement, for Dr. Zeh was the examining physician, who certified that the applicant was insurable; and defendant would naturally put more reliance upon the opinion of a physician familiar with the physical condition of the deceased as his attending physician than to one who was not.   See Phillips v. Insurance Co. (Sup.) 9 N. Y. Supp. 836.

Upon the whole case, we conclude that the evidence against the truth of such warranties on defendant's part is so preponderating that this verdict should not be allowed to stand.   We therefore reverse the judgment and order, and grant a new trial; costs to abide the event.

HERRICK and PUTNAM, JJ., concur.   LANDON and MERWIN, JJ., dissent.