CLEMENTS v. CONNECTICUT INDEMNITY CO.

(Supreme Court, Appellate Division, Fourth Department. May 7, 1898.)

1. LIFE INSURANCE—APPLICATION—FALSE STATEMENTS—BREACH OF WARRANTY.
   The assured stated in an application for life insurance that he had not consulted any other physician, was not subject to palpitation or difficulty in breathing, that no physician had given an unfavorable opinion upon his life in reference to insurance, and that his habits had always been temperate and sober; all of which was untrue. Held that, where the application warranted the statements to be true, and agreed that they were material, and it was made a part of the contract and of its consideration, there was a breach of warranty that avoided the policy.

2. SAME—AVOIDANCE OF POLICY.
   A warranty in an application for life insurance avoids the policy where all the representations are not substantially true, whether they are material or not.

Appeal from trial term, Cattaraugus county.

Action by John Clements against the Connecticut Indemnity Company. There was a judgment for plaintiff, and from the judgment and an order denying a new trial defendant appeals. Reversed.

The defendant is a life insurance company organized under the laws of the state of Connecticut, and doing business in this state. On the 19th day of June, 1895, one James Clements applied to one of the defendant's agents by the name of McGeorge for an insurance upon his life in the sum of $3,000, and demanded what was known as "The Ideal Natural Premium Policy. Indemnity. Class First." This application was forwarded to one Sherman, the defendant's manager of agencies, by whom it was in turn forwarded to F. W. Barrow, the defendant's general agent or superintendent at the city of Buffalo. Upon the receipt thereof Barrow sent for McGeorge, and informed him that the defendant only wrote policies upon the plan asked for in sums of either $5,000 or

·$10,000, and that, if Clements insisted upon that form of policy, another application would be necessary. In the first application, which was accompanied ·by the report of the medical examiner, it was stated that the applicant "had a slight systolic murmur," which had "diminished steadily for the past six or eight years, and is now nearly inaudible." It also stated that application for insurance had been made to other insurance companies or associations upon which a policy had not been issued, and that he (Clements) did not know the name of the companies; and in another part of his application, in answer to the question, "Have you ever been rejected by any insurance company, association, or society?" the applicant answered, "Not that I know of." In the course of the interview between McGeorge and Barrow it was stated by the former that he thought ·Clements did not know that his previous application had been rejected, whereupon Barrow said that the answer to the inquiry concerning previous applications should have been "No," instead of "Not that he knew of"; and the evidence tends to show that the answer was thereupon altered so as to conform to the ·suggestion thus made. Barrow also requested the agent to have another examination made of Clements' heart, and to report the result to him,·and, if not satisfactory, he would send a physician down from Buffalo to make a still further ·examination. A new application was thereupon filled out by Barrow, and delivered to McGeorge, with directions to have Clements sign it, and return the same, with the report of the supplemental medical examination. Accordingly, on the 5th day of August following, McGeorge and Dr. Kales, the medical examiner of the defendant, went to Clements' house, where an examination was had, which proved satisfactory. Clements thereupon signed the new application ·without reading it, and in due course of time a policy for $5,000 was issued upon :his life, the plaintiff being one of the beneficiaries named therein, and the amount ·of his interest being $2,000. This policy was dated August 9, 1895, and the as- ·sured died on the 2d day of May following.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, ,and WARD, JJ.

Isaiah Fellows, for appellant.
George E. Spring, for respondent.

ADAMS, J. The facts above narrated, as to which there is little ·or no dispute, form a curious chapter of life insurance, and they tend to explain in some measure why it is that the time and attention of the courts are so constantly occupied in efforts to determine intricate and perplexing controversies arising between insurance companies ,and their patrons. Were these the controlling facts of the case under ·consideration, they would doubtless call for an examination of some quite novel and interesting legal questions, but they are referred to by reason of their historical significance more than anything else, for ·upon a perusal of the entire record we discover other facts which are really more potential in determining the result of this appeal, and these we will now consider.

The two applications preceding and forming the basis upon which the policy in suit was issued, while containing several statements of a ·somewhat conflicting character, also contain others as to which there ·is no uncertainty whatsoever, and of the latter class there is at least ·one which we deem of supreme importance. Each of these applica- ·tions appears to be divided into three parts, the first and second of which are signed by the applicant, and the third by the medical ex- ;aminer. Part first contains inquiries concerning the physical condition of the applicant, as well as that of his ancestors and other imme- ·diate relatives; and among the questions there asked of the applicant ·were the following, viz.: "6. (a) What other physicians have you con-

sulted? (b) When and for what?" In the first application the answer to each of these inquiries is, "None." In the second, the answer to subdivision (a) is the same, while to subdivision (b) there is no answer whatever. So that we have the deliberate and unqualified statement of the insured that no physicians save the one specifically mentioned by him as his attending physician had been consulted by him prior to the time when his statement was made and signed. Now, what are the undisputed facts of the case? Dr. Charles D. McLouth was called as a witness for the defendant, and testified that prior to May, 1884, he treated Clements for a "Colles fracture" of the wrist, and that, while he never treated him for any sickness, he did attend him prior to the year 1884, and found that he then had a weak heart, accompanied by difficult breathing, palpitation, hurried respiration, and weak pulse; that in 1887 he discovered the same condition of things, although in a somewhat modified form, and that he made both of these examinations at the request of Clements. Dr. Elbert L. Fisher, another physician, testified that in the fall of 1894 he was called in to consult with Dr. Kales, who was then attending Clements for the grippe; that he then made an examination of the assured and found him apparently convalescing from pneumonia, with a weak, irritable heart; while another physician, Dr. Walker, testified that in 1886 he made an examination of Clements for the purpose of enabling him to take out a policy of life insurance, but, finding a systolic murmur of the heart present, he did not complete his examination. He further testified that in 1892 or 1893 Clements came to his office for advice; that he then made a physical examination of him, and discovered "an eczematous condition of the anus," for which he treated him. And Dr. Charles W. Guild testified that in June, 1894, he examined Clements, and prescribed for him for the same difficulty. Thus it will be seen that within a period of 10 years immediately preceding the filing of his application with the defendant the applicant had consulted at least four other physicians, and had received advice or treatment from each one of them for some bodily disorder; and that, notwithstanding this fact, he assured the defendant that he had consulted no other physician whatever. It is hardly necessary to suggest that the answers which the assured assumed to give to the inquiries made of him were untrue, and the simple inquiry which therefore presents itself is, what effect did such answers necessarily have upon his contract of insurance?

Each of the applications signed by Clements contained the following provisions or stipulations: (1) "I hereby declare that the accompanying application to the Connecticut Indemnity Association * * * for an insurance upon my life was signed by me, and that I renew and confirm my agreement therein. * * *"
(2) "I hereby warrant and agree: I. That all the foregoing statements and answers written and those contained in part II., made or to be made to the medical examiner, are full, complete, and true, and that part I. and part II. of this application are offered to the association as a consideration for any policy hereby applied for." In the policy which was subsequently issued it is declared that the life of James Clements is insured "in consideration of the state-

ments, agreements, and warranties made in the application" therefor, and that "the application on the faith of which this policy issues is hereby referred to, and made part of this contract, and the insured hereby agrees that the answers and statements therein contained are material, and that they are full, complete, and true; that he has verified, and adopts as his own, each statement, representation, and answer made therein, whether written by him or not; and that statements made to an agent, and not therein written, shall form no part of this contract." It is apparent, therefore, that the basis of and the consideration for the contract of insurance upon which the plaintiff rests his claim was the information imparted by the application of the assured, which was warranted by him to be both material and true; and, that information being manifestly untrue, it follows that there has been a breach of warranty, which, it seems almost unnecessary to add, avoids the policy. Hanna v. Association, 11 App. Div. 245, 42 N. Y. Supp. 228; Roche v. Supreme Lodge, 21 App. Div. 599, 47 N. Y. Supp. 774; Story v. Association (Sup.) 4 N. Y. Supp. 373, affirmed 125 N. Y. 761, 27 N. E. 408. It is now a well-established principle of the law of insurance that the effect of a warranty is to make void the policy if all the representations of the assured upon which the policy is issued are not substantially true, and this without regard to their actual materiality. Foot v. Insurance Co., 61 N. Y. 571; Cushman v. Insurance Co., 63 N. Y. 404; Dwight v. Insurance Co., 103 N. Y. 341, 8 N. E. 654. There are, of course, exceptions to this, as there are to almost every other, rule; as, by way of illustration, where the falsity of the warranty is known to the insurer at the time of issuing its policy. But the present case is not embarrassed by any such complications, for, although it does appear that the defendant's agent was informed that there was some impairment of Clements' heart action, due either to organic or functional derangement, it does not appear that it was of such a character as to arrest the attention of any other physician than Dr. Kales. Nor can it be inferred that the defendant was aware that Clements had consulted four different physicians for certain bodily ailments, because he at one time suffered a fracture of the wrist, which doubtless required and received the care and attention of a surgeon. There are several other statements contained in the two applications which the evidence tends very strongly to establish the falsity of, as, for instance, that no physician had given an unfavorable opinion upon the applicant's life with reference to life insurance. Clements knew that he had been examined for life insurance, previous to the examination of Dr. Kales; and he likewise knew that a prior application for life insurance had not been accepted, for he so stated in his first application. He must, therefore, have been aware that such rejection was based upon an unfavorable opinion as to his physical condition. This being the case, his answer not only contained a false statement, but one which he knew to be such. Again, he stated in both applications that he was not subject to palpitation or difficulty in breathing, whereas the uncontradicted evidence is that he had been thus troubled for

several years.  He further represented that his habits had always-
been temperate and sober, although, in his first application, he qual-
ified this statement by saying that he "formerly used some beer";
and the falsity of this representation is likewise fully established:
by the evidence of witnesses who frequently saw him under the
influence of liquor.  It is but fair to say, however, that there are
circumstances attending some, if not all, of these representations-
which it is claimed take them out of the operation of the rule·
which has just been adverted to, and this contention is not without
some substantial foundation; but the breach of warranty to which
we have directed our principal consideration seems so clearly es--
tablished, and so fatal to the plaintiff's case, that we do not deem·
it necessary to give to the other questions which have been pre-
sented the examination which they would otherwise. be entitled to·
receive.  For the reason first stated we think that the judgment
and order appealed from should be reversed, and a new trial grant--
ed.

Judgment and order reversed, and a new trial ordered, with costs·
to the appellant to abide the event.  All concur.