FITZGERALD v. SUPREME COUNCIL OF CATHOLIC MUT. BEN. ASS'N.

(Supreme Court, Appellate Division, Fourth Department.    March 22, 1899.)

1. INSURANCE—APPLICATION—FALSE STATEMENT—WARRANTY.

A false statement in an application and physician's report which are not referred to in the policy is not a warranty, though it is agreed in the application and report that the statements therein are warranties.

2. SAME—FRAUDULENT ANSWERS.

An application for insurance provided that, if any misrepresentations or fraudulent "or" untrue answers were given, the policy should be void. *Held*, that untrue statements did not avoid the policy, unless they were fraudulently untrue.

3. SAME.

Questions in an application for insurance required the applicant to state, "so far as [he knew], what was the age at death," etc.  *Held*, that the answers could not be regarded as warranties, absolute verity not being required.

4. SAME.

Answers in an application for insurance were required to be given in a schedule.  In the first column were the questions: "How many brothers have you had?  How many sisters have you had?"  No answers were inserted, but in the next column, headed "Age, if living," appeared the figures, "6," "4 32," "30–21–19," and "1 24."  In the column headed "Age at Death" were the figures, "2 dead," "23–25."  *Held*, that it could not be said, as a matter of law, that insured stated that he had had only six brothers, and only two were dead, or that he had had only one sister.

Appeal from trial term, Oswego county.

Action by Michael Fitzgerald against the Supreme Council of the Catholic Mutual Benefit Association.  There was a judgment for defendant, and plaintiff appeals.  Reversed.

The action was commenced on the 8th day of June, 1896, to recover upon a certificate or policy of insurance bearing date on the 5th day of October, 1894, which was issued by the defendant to one Francis Fitzgerald.  The certificate was in the words and figures following:

"No. 53,320.                                                                                $2,000.

"Supreme Council of the Catholic Mutual Benefit Association.

"This certificate, issued by the authority of the Supreme Council of the Catholic Mutual Benefit Association, witnesseth, that Brother Francis A. Fitzgerald is a member of St. Stephen's Branch, No. 76, of said association, located at Oswego city, in the state of New York; is entitled to all the rights and privileges of membership in the Catholic Mutual Benefit Association, and to participate in the beneficiary fund of the association to the amount of two thousand dollars, which sum shall at his death be paid to his brother Michael Fitzgerald, two thousand dollars.  This certificate is upon the express condition that said Francis Fitzgerald shall in every particular, while a member of said association, comply with all the laws, rules, and requirements thereof.  In witness whereof, the supreme council of the Catholic Mutual Benefit Association has caused this to be signed by its supreme president and supreme recorder, and the seal thereof to be attached, this fifth day of October, one thousand eight hundred and ninety-four.

"Attest:   C. J. Hickey, Supreme Recorder.
"[L. S.]                                     J. S. McGarry, Supreme President.

"We, the undersigned, president and recording secretary of St. Stephen's Branch, No. 76, do hereby countersign this certificate, and attach the seal of this branch hereto, rendering the same valid and in full force this 25th day of October, 1894.

"Attest:   Jas. H. Kane, Recording Secretary.
"[L. S.]                                     Peter Raby, President."

Such certificate was issued pursuant to an application in writing for membership in the association of the defendant signed by the insured on the 30th day of August, 1894. It was made upon a blank form furnished by the defendant, and, among other things, the insured was required to make answer to a large number of questions, which were printed in said application, relating to his residence, his age, religion, habits, physical condition, etc.; and he was, among other things, required to make answer to the following questions:

"State, so far as you know, what was the age at death, cause of death, duration of final illness, and state of previous health of each of the following persons, if deceased? What is the age and present state of health of each of them, if now living?"

The answers to such questions, so far as material to the issues in this case, were contained in the following form or schedule, and were as follows:

| | Age, if Living. | Condition of Health. | Age at Death. | Cause of Death. | How Long Sick. | Previous Health. |
|---|---|---|---|---|---|---|
| How many brothers have you had? | 6<br>4 32<br>30-21-19 | Very good | 2 dead<br>23-25 | R. R. accident.<br>Relapse typhoid fever. | 5 days<br>3 weeks | Very good<br>"  " |
| How many sisters have you had? | 1 24 | | | | | |

On the reverse side of said application are a large number of printed questions, supposed to be propounded by the medical examiner of the defendant, and to be answered by the insured, which questions also relate to the physical condition of the insured, past and present, his habits of life, etc.

Then follows the agreement, which is a part of such application, and, so far as is important, is as follows:

"The applicant for membership hereby declares that he is not now afflicted with any disease or disorder, * * * and that the foregoing application and this declaration, together with the answers and explanations given to the various questions in Form A and B indorsed hereon, shall form the exclusive and only basis of agreement between the above-named applicant and the C. M. B. A., and that if any misrepresentation or fraudulent or untrue answers or statements have been made, or any facts which should have been stated to the association have been suppressed therein, * * * that then, in either event, such agreement shall become null and void, and all moneys which shall have been paid shall be forfeited to said association for its use and benefit."

Upon the same day (August 30, 1894) the insured made answer to a large number of questions (22 in number) covering substantially the same ground as those answered by him in the application, in a paper known as the "Medical Examiner's Report." The questions and answers involved in this action were the same in both papers. After such questions and answers in the medical examiner's report follows the following agreement, which was also signed by the insured August 30, 1894:

### "Agreement.

"I, Francis A. Fitzgerald, having made application for membership in the C. M. B. A., do hereby agree that compliance on my part with all the laws, rules, regulations, and requirements of the C. M. B. A. now in force, or that shall hereafter be enacted by said association, is the express condition upon which I am to be entitled to participate in the beneficiary fund in the amount named in the constitution and laws of the association: provided, that the amount paid to the person or persons named as beneficiaries in my application and medical examiner's report shall not at any time exceed the sum of two thousand dollars,—and to have and enjoy all the other benefits and privileges of said association. And I hereby certify that the answers made by me to the questions propounded by the medical examiner of Branch No. 76, of the city of Oswego, which are hereunto attached, and form a part hereof,

are true. And I hereby agree that the above statement shall form the basis of the contract between myself, my heirs and assigns, of the first part, and of the C. M. B. A., of the second part. * * * I further agree that should my death be caused by or through intemperance, or any illegal act of my own, all my right, title, and interest in the beneficiary shall revert to the association. And 1 agree that, should I be convicted of having willfully made any misstatements or concealed any known facts, such misstatements or concealment of facts shall be deemed evidence of fraud on my part, and shall, from date of said conviction, sever my connection with and constitute expulsion from, the association, and render all obligations of said association to me null and void.

"Dated at city of Oswego, state of New York, this 30th day of August, 1894.
"Signature of applicant (full name): Francis A. Fitzgerald.
"Signed in the presence of C. A. Sheridan, M. D., Medical Examiner."

The defense in this action is based solely upon the ground that the insured stated in his application for insurance, and also in the report of the medical examiner, both of which he signed, that he had had only six brothers, whereas in fact he had had seven brothers, and that he stated that only two of such brothers were dead, when in fact three of such brothers were dead; that he also stated that he had had only one sister, when in fact he had had two sisters; and that he did not state that one sister was dead. It was claimed upon the trial that such answers were warranties, that they were untrue, and that, therefore, the plaintiff cannot recover. Every other question was withdrawn from consideration by the court, by the statement or stipulation made in open court by defendant's counsel. He stated, in substance, that the only defense which was urged was that the statements of the insured above quoted, referring to his brothers and sisters, were false, and that, that fact having been established, the defendant was entitled to judgment dismissing the complaint, regardless of whether such statements were made fraudulently or were made with intent to deceive the defendant, and without reference to whether such statements were material to the risk or otherwise. The learned trial justice decided the case, and directed a verdict for the defendant, upon the issue thus presented. The insured died on the 1st day of September, 1895. The plaintiff is the beneficiary named in the certificate of insurance, and brings this action to recover the amount of such certificate.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

L. C. Rowe, for appellant.
C. J. Church, for respondent.

McLENNAN, J. Assuming that the answers of the insured to the questions in the application and in the medical examiner's report above referred to were false and untrue, it becomes important to determine whether such answers were warranties, or misrepresentations only. If such answers were warranties, then, clearly, no recovery can be had; and it is of no consequence that the answers were immaterial, cr that they were made in good faith. A complete defense is established by proving the answers and their falsity. 1 May, Ins. § 156 "A breach of warranty is equally fatal, whether the thing warranted be material or immaterial, or was or was not intended, or was or was not the fault of the insured, or was made, not by the person insured, but by those employed by him; and warranties must be not only substantially, but strictly, complied with." Pars. Cont. (5th Ed.) 397; Ang. Ins. § 140; Ripley v. Insurance Co., 30 N. Y. 136; Bac. Ben. Soc. & Life Ins. § 194. If, however, the answers above referred to were representations, merely, it is equally

well settled that, in order to defeat a recovery, in addition to proving that the answers were made, and that they were untrue, the defendant must prove either that they were made fraudulently or with intent to deceive, or that they were material to the risk. 1 May, Ins. § 181, and cases cited; Pars. Cont. 401, 405. Bacon, in his work on Benefit Societies and Life Insurance (section 206), says:

"A false representation, unlike a false warranty, will not operate to vitiate the contract or avoid the policy, unless it relates to a fact actually material, or clearly intended to be made material by the agreement of the parties. It is sufficient if representations be substantially true."

The rule is well settled that courts will not hold that statements made by the insured in a policy, or in any other paper connected with it, are warranties, unless such is the clear intention of the parties. It was held in the case of Darrow v. Society, 116 N. Y. 537, 22 N. E. 1093:

"For the purpose of upholding a contract of insurance, those provisions will be strictly construed as against the insurers; and, when its terms permit more than one construction, that will be adopted which supports its validity. It is only when no other is permissible by the language used that a construction which works a forfeiture will be given to it."

As was said in the case of Fitch v. Insurance Co., 59 N. Y. 572, per Rapallo, J.:

"These policies are provisions made, usually, by persons of slender means, for the benefit of their families in case of death. They sometimes devote their small savings for many successive years to paying the premiums. To justify us in holding that all the answers given to the multitude of questions asked in the case before us are warranties, or that a mistake or unintentional omission as to any one of them should avoid the policy, the clearest, most unequivocal and unqualified language should be employed in the policy and conditions."

In Dilleber v. Insurance Co., 69 N. Y. 256, the court say at page 263:

"Warranties in policies of insurance are strictly construed. They will not be extended to include anything not necessarily implied in their terms. Loud v. Insurance Co., 2 Gray, 221; Campbell v. Insurance Co., 98 Mass. 381; Hide v. Bruce, 3 Doug. 213." Moulor v. Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466.

A warranty, as applied to life insurance, is defined by Bacon (section 194) as:

"A stipulation inserted in writing on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. The stipulation is considered to be on the face of the policy, although it may be written on the margin, or transversely, or a subjoined paper referred to in the policy."

This definition was approved in Ripley v. Insurance Co., 30 N. Y. 136.

Lord Mansfield said in Pawson v. Watson, 1 Cowp. 785:

"In order to make written instructions valid and binding as a warranty, they must undoubtedly be inserted in the policy."

Bunyon, in his work on Life Assurance (134), says:

"In order to make any statements binding as warranties, they must appear on the face of the instrument itself, by which the contract of insurance is effected. They must either be expressly set out, or by inference incorporated

in the policy.  If they are not so, they are not warranties, but representations."

See, also, 1 May, Ins. § 156.

A "representation" is defined by May on Insurance (volume 1, § 181), as follows:

"A representation is a statement incidental to a contract, relative to some fact having reference thereto, and upon the faith of which the contract is entered into.  If false and material to the risk, the contract is avoided.  Such false statement is termed, in insurance, a 'misrepresentation,' which has been well defined to be a statement of something as a fact which is untrue in effect, and which the insured states knowing it to be untrue, with the intent to deceive the insurers, or which he states positively as true without knowing it to be true, and which has a tendency to mislead; such fact in either case being material to the risk, and adverse to the insurers."  Daniels v. Insurance Co., 12 Cush. 416, and cases cited.

Bacon, in his work on Benefit Societies & Life Insurance (volume 1, § 206), says:

"A representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it. * * * It is sufficient if representations be substantially true.  They need not be strictly and literally true."  Arn. Ins. 182; Insurance Co. v. Johnston, 80 Ala. 467, 2 South. 125.

In the case at bar the alleged false statements of the insured do not appear in the policy, and are not in any manner referred to in it; nor are the papers in which they are contained, to wit, the application and medical examiner's report, in any way referred to in the policy, and no allusion is made to such statements or to such papers. The certificate or policy of insurance in and of itself formed a complete contract between the parties.  In order to establish his cause of action, the plaintiff was only required to prove the execution and delivery of the policy, and the death of the insured.  Edington v. Insurance Co., 67 N. Y. 191.

Assuming that in the application and medical examiner's report, which were signed by the insured nearly two months prior to the time the policy was issued, it is agreed that the statements therein contained are warranties, and that they shall form the basis of the contract between the parties, then the simple question is presented whether such agreement is sufficient to incorporate such statements in the policy, make them a part of it, and give to them the force and effect of warranties, although not referred to in the policy, or whether, notwithstanding the language used in such agreements, such statements continued and remained representations only.  In the case of Insurance Co. v. Cotheal, 7 Wend. 72, the court say:

"The doctrine of warranty, in the law of insurance, is one of great rigor, and frequently operates very harshly upon the assured. * * * A warranty, therefore, is never created by construction.  It must either appear in express terms, affirmative or promissory, or must necessarily result from the nature of the contract.  1 Marsh. Ins. 347–350; Phil. Ins. 112, 124.  It must therefore appear on the face of the policy, in order that there may be unequivocal evidence of a stipulation, the noncompliance with which is to have the effect of avoiding the contract. * * * No case has been referred to in which this rule has been relaxed, except in relation to the printed proposals of the underwriters accompanying and always attached to the policy. It has been held that the conditions specified in those proposals, to be performed by the assured, are conditions precedent, and are to be construed as

warranties incorporated in the policy; * * * but these printed proposals are always referred to by the policy, and it is in express terms declared that the policy is made and accepted in reference to them. They are as much, therefore, a part of the policy, as though they were printed or written on its margin; and no case has been given to the court in which any other document has been held to have been incorporated into the policy by reference, as to give to its contents the effect of a warranty or a condition precedent on the part of the insured. And I am not disposed to lead the way in the extension of this harsh and rigorous doctrine."

### In the case of Pawson v. Watson, supra, it was said:

"Any representations or instructions not referred to in the policy are not to be treated as warranties."

### In the case of Snyder v. Loan Co., 13 Wend. 92, the decision in the case of Insurance Co. v. Cotheal, supra, is cited with approval, and the court say:

"In determining what shall constitute a warranty, and what shall be a representation merely, the general principle seems to be well settled that an express warranty must appear on the face of the policy, and that any instructions for insurance, unless inserted in the instrument itself, do not amount to a warranty. * * * It is not necessary to deny that a separate paper may be by express stipulation made a part of the policy, but there is no such reference in the present policy as to authorize the court to give the survey the force of a warranty."

### In the case of Owens v. Insurance Co., 56 N. Y. 565, the headnote is as follows:

"No part of the application for insurance can be regarded as a warranty, unless made so by the contract of insurance. The parts not adopted, and made the basis of the contract, so as to constitute warranties, are to be treated as representations not-prejudicing the rights of the insured, unless they are material to the risk, are untrue, and were not made in good faith."

### In that case the application for insurance concluded as follows:

"And the applicant hereby covenants and agrees that the foregoing valuation, description, and survey are true and correct; and they are submitted as his warranty, and the basis for the desired insurance."

The language just quoted is even more pointed and emphatic than any language contained in the agreements which were made parts of the application and medical examiner's report signed by the insured in this case; yet the court, at page 572, per Grover, J., says:

"Yet no part of this application must be regarded as a warranty, unless made so by the contract of insurance. To do this, the same stipulations must be inserted in the contract, or, if not so, the paper containing them must be referred to and adopted so as to become a part of the contract."

### In the case of Vilas v. Insurance Co., 72 N. Y. 590, it was held that the policy did not with sufficient definiteness refer to the application, and that the statements contained in such application were representations merely. At page 592 the court say:

"To make an application constitute a part of the policy of insurance, there should be some reference to it which evinces that the parties understood and accepted it as such."

### In the case of Boehm v. Insurance Co. (Sup.) 30 N. Y. Supp. 663, the court say:

"There is no doubt about the rule that no statement made to an insurance company as the basis of a contract of insurance can be regarded as a war-

ranty, unless the paper in which it is made is by necessary inference made a part of the contract."

And at page 664 the court further say:

"The first thing to be noticed in this case is that the application is not made a part of the policy by anything contained in the policy itself, strictly speaking."

That case was affirmed in 86 Hun, 617, 35 N. Y. Supp. 1103. See, also, Cushman v. Insurance Co., 4 Hun, 783.

In the case of Foley v. Royal Arcanum, 151 N. Y. 196, 45 N. E. 456, where the application for insurance contained the following:

"I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any fraudulent or untrue statements made herein, or to the medical examiner, or any concealment of facts by me in this application, * * * shall forfeit all rights of myself and my family or descendants to any benefits and privileges thereunder,"

—it was held that the statements contained in such application were warranties, because, as said by the court at page 201, 151 N. Y., and page 457, 45 N. E:

"From allusions made in the certificate thereto [to the application], the conclusion is irresistible that it was the intention of the parties to make the warranty and waiver a part of the contract."

The case of Clements v. Indemnity Co., 29 App. Div. 131, 51 N. Y. Supp. 442, recently decided by this court, and relied upon by respondent's counsel, is not in conflict with the proposition that statements contained in the application or other paper upon which a policy of life insurance is issued must be referred to in the policy, in order to give them the effect of warranties. In that case it was declared in the policy which was issued on the life of Clements that "in consideration of the statements, agreements, and warranties made in the application" therefor, and that "the application on the faith of which this policy issues is hereby referred to and made part of this contract, and the insured hereby agrees that the answers and statements therein contained are material, and that they are full, complete, and true; that he has verified and adopts as his own each statement, representation, and answer made therein, whether written by him or not; and that statements made to an agent, and not therein written, shall form no part of this contract." Concededly, the application, and the statements which it contained, were made a part of the policy by explicit reference to it; and the decision in that case does not in any manner support the contention of respondent's counsel, that the statements of the insured in this case may be regarded as warranties. In the case of Breeze v. Insurance Co., 24 App. Div. 377, 48 N. Y. Supp. 753, recently decided by this court, also cited by respondent's counsel, the policy which was being considered contained the provision that "in consideration of the answers and statements contained in the printed and written application for this policy, all of which are hereby made warranties, and hereby made a part of this contract, and of the payment," etc. The policy was issued, and in that case it was held that the statement made in the application as to the age of the insured was a warranty, and that, it having been proven that such statement was false, no

recovery could be had. The decision in that case in no manner supports the defendant's contention. We think no case can be found in which it has been held that where the policy of insurance does not in some manner refer to the statements of the insured, or the papers in which such statements are contained, such statements are warranties. Of course, the rights of the parties in this case are to be determined, not only from the policy or certificate, but also from the application, the medical examiner's report, and perhaps from oral statements or representations made by the insured; but we think it clear that such statements, not being referred to in the policy of insurance in question, should not be given the force and effect of warranties. The language of the application and of the medical examiner's report, and the agreement attached to them, respectively, signed by the insured, do not make the statements therein contained warranties. In the application the applicant for membership declares that "the foregoing application and these declarations, together with the answers and explanations given to the various questions in Form A and B indorsed hereon [which include his answers in relation to his brothers and sisters], shall form the exclusive and only basis of the agreement between the above-named applicant and the [defendant], and that if any misrepresentations or fraudulent or untrue answers or statements have been made, or if any facts which should have been stated to the association have been suppressed therein, * * * then in either event such agreement shall become null and void." There is nothing in the agreement above quoted which would justify the court in holding, as a matter of law, that the plaintiff cannot recover, solely because a statement made by the insured in such application is untrue. The words, "if any misrepresentations or fraudulent or untrue answers or statements have been made," must be held to be equivalent only to the words, "if any misrepresentations or fraudulent or fraudulently untrue answers or statements have been made." Dilleber v. Insurance Co., supra. Otherwise, the words "misrepresentations or fraudulent" are superfluous, because the word "untrue" would cover and include all. In such case it is said by May on Insurance (volume 1, § 168):

"Such declaration cannot be used in the disjunctive. If so used, the clause which relates to fraudulent concealment and designedly untrue statements is superfluous and unnecessary, because it is only a reiteration in extenso of that which is involved in the former clause, which requires the particulars to be correct and true."

And the author further says that in such case the construction should be:

"If I [the insured] am guilty of any fraudulent concealment or designedly untrue statement in those answers, the policy shall be null and void."

This proposition is further emphasized by the language of the agreement attached to the medical examiner's report, which agreement, in express terms, declares that, in order to deprive the insured of the benefits provided for in the policy, he (the insured) must be convicted of having willfully made misstatements or concealed known facts. When the agreement which is made a part of the ap-

plication and the agreement which is made a part of the medical examiner's report are considered in connection with the question propounded in each of said documents, to wit, "State, so far as you know, what was the age at death," etc., to which the answers complained of were given by the insured, we think it clear that such answers cannot be regarded as warranties, and that they cannot be regarded as implying absolute truthfulness, but that, on the contrary, such agreements, when considered in connection with the question propounded, should be held only to mean that the insured was required to answer the question propounded in good faith, honestly, and as he then understood the fact to be. Many authorities might be cited to the effect that, where the meaning or construction is ambiguous, such construction will be given to the language employed as is most favorable to the insured. As was said in the case of National Bank v. Insurance Co., 95 U. S. 673:

"When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent (a warranty) to any binding contract, the court should lean against that construction which imposes upon the assured the obligation of a warranty. The company cannot justly complain of such a rule. Its attorneys, officers, or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud, and of securing the just rights of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself."

Considering the language contained in the agreement attached to the application, and also the language contained in the agreement attached to the medical examiner's report, the conclusion is irresistible that it was not the intention of the parties that the statements therein contained should be warranties, but that they should be regarded as representations merely, and also that, when the question propounded is considered, the answers thereto were not intended to imply absolute verity, but that the insured was only called upon to make such answers in good faith, honestly, and in accordance with his best recollection and knowledge at the time such answers were made. It will be observed that by the question, the answers to which are complained of, the insured is asked to state so far as he knows. In the application one penalty is provided in case the answers to such question are misrepresentations or fraudulent or untrue. In the medical examiner's report another penalty is provided in case, by the answers to the same question, the insured is convicted of having willfully made any misstatements or concealed any known facts. We think that under those circumstances the insured was only required to make such answers as at the time he believed to be true.

Under the evidence and circumstances of this case, we think it cannot be said, as a matter of law, that the insured made false or untrue statements regarding his brothers and sisters in the application. As before said, the question propounded was:

"State, so far as you know, what was the age at death, cause of death, duration of final illness, and state of previous health, of each of the follow-

ing persons, if deceased. What is the age and present state of health of each of them, if now living?"

The answers were required to be given in a form or schedule prepared by the defendant. In the first column are the questions: "How many brothers have you had? How many sisters have you had?" No answers are made to such questions, but in the next column, which is headed, "Age, if Living," appear the figures "6," "4 32," "30–21–19," "1 24." In the next column, which is headed, "Condition of Health," there are only the words "Very good." In the next column, headed, "Age at Death," follows "2 dead, 23–25." And so on,— "Cause of Death," "How Long Sick," "Previous Health," etc. We think that from those answers it is impossible to say, as a matter of law, that the insured stated that he had had only six brothers, and that only two of such brothers were dead, or that he had had only one sister. The questions and answers were made ambiguous, uncertain, and indefinite by the action of the defendant itself, and it cannot now seek to defeat a recovery because of the apparent discrepancy made by the insured in stating the facts. Burleigh v. Insurance Co., 90 N. Y. 220; Baley v. Insurance Co., 80 N. Y. 21; Higgins v. Insurance Co., 74 N. Y. 9. The answers contained in the medical examiner's report are more definite and less ambiguous, but, as has been before seen, it is provided in the agreement signed by the insured, attached to such report, that, in order to deprive him of the rights under the policy issued to him, he must be convicted of having willfully made misstatements or concealed known facts.

The conclusion is reached that the defendant, in order to establish its defense, was called upon to prove to the satisfaction of a jury that the statements of the insured were made as claimed, that such statements were untrue, and were made fraudulently and with intent to deceive the defendant, or else that such statements, if made, were material to the risk.

It follows that the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event. All concur, except WARD, J., not voting.