## Case No. 17,545.

### WHITE v. CONNECTICUT MUT. LIFE INS. CO.

[4 Dill. 177; 10 Chi. Leg. News. 83; 5 Reporter, 39; 7 Ins. Law J. 101; 5 Cent. Law J. 486.] [1]

Circuit Court, W. D. Missouri. Nov., 1877.

LIFE INSURANCE—MISSOURI ACT AS TO MISREPRESENTATIONS IN POLICIES, CONSTRUED.

1. The act of the legislature of the state of Missouri of March 23, 1874, in respect of policies of life insurance, extends to all policies de-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 5 Reporter, 39, contains only a partial report.]

livered in this state after the act went into effect.

[Cited in Wall v. Equitable Life Assur. Co., 32 Fed. 275.]

[Cited in Bammessel v. Brewers' Fire Ins. Co., 43 Wis. 466; Havens v. Germania Fire Ins. Co., 123 Mo. 403, 27 S. W. 721; Insurance Co. v. Leslie, 47 Ohio St. 418, 24 N. E. 1072; Reilly v. Franklin Ins. Co., 43 Wis. 456.]

2. Where the provisions of that act are in conflict with the provisions of the policy, the act controls the policy.

3. Whether the applicant for insurance may waive the benefit of the act, quære; but no such waiver arises by implication.

4. The act extends to warranties as well as to representations.

5. The purpose and policy of the act expounded.

Action by the plaintiff, as administratrix of the estate of her late husband, John H. White, on a policy of insurance, dated October 2d, 1874, upon the life of the said White for the sum of $10,000. The assured was a citizen of Missouri, and the policy was issued and delivered to him in this state. When it was so delivered the act of March 23d, 1874, was in force. This act is as follows: "Section 1. No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable; and whether it so contributed in any case, shall be a question for the jury. "Sec. 2. In suits brought upon life policies heretofore or hereafter issued, no defence based upon misrepresentation in obtaining or securing the same shall be valid, unless the defendant shall, at or before the trial, deposit in court, for the benefit of the plaintiffs, the premiums hereafter received on such policies, with six per cent. interest per annum from the date of receipt. "Sec. 3. This act shall take effect and be in force from and after its passage."

The defendant company answers, setting forth that the policy contained a provision or condition, as follows: "That the answers, statements, representations, and declarations contained in or indorsed upon the application for this insurance—which application is hereby referred to and made a part of this contract—are warranted by the assured to be true in all respects, and that if this policy has been obtained by or through any fraud, misrepresentation, or concealment, then this policy shall be absolutely void." The answer further alleges that, in the application for the policy, the assured falsely answered that he had never had asthma; also falsely answered that he had never been addicted to the use of alcoholic beverages; also falsely answered that he had not been attended by a physician for a long time; also falsely answered that he had no usual medical attendant. These several answers of the assured, contained in the application, are alleged to be false; but the counts in the answer of the defendant demurred to, do not contain an allegation that the matters misrepresented contributed to the death of the assured, or that the said misrepresentations were fraudulently made, with a view to deceive or mislead the company.

The plaintiff demurs.

Clarke, Waters & Winslow, for plaintiff.

Lee & Adams and Botsford & Williams, for defendant.

[Before DILLON, Circuit Judge, and KREKEL, District Judge.]

DILLON, Circuit Judge. The statute of March 23d, 1874, is silent as to what shall be the effect if the policy contains conditions in conflict with it. And the policy in suit contains no express reference to the statute, and no express waiver by the assured of its provisions. If the statute applies, the counts of the answer to which the demurrer relates are not sufficient, because there is no averment that the matters misrepresented were material. If the statute does not apply to this contract and control the rights of the plaintiff, the answer is sufficient without such an averment. We have, therefore, two leading questions presented:

1. Whether the statute controls the provisions of the policy, or whether the provisions of the policy inconsistent with those of the statute control the latter. If the statute controls the policy where the two are in conflict, then—

2. Whether the statute, by its true construction, embraces within its remedial provisions warranties as well as representations, as these are known to the law of insurance.

In Chance v. Union Mut. Life Ins. Co. [Case No. 2,588], the circuit court of the Eastern district of Missouri (Dillon and Treat, Judges), at the September term, 1876, ruled the following points under the enactment here in question:

"(1) A contract of life insurance made by a foreign company doing business in Missouri, and countersigned and delivered in this state by the local agents of the company to, and insuring, a citizen, inhabitant, or other person in the state, falls within the Missouri act of March 23, 1874, if delivered after that act went into effect. As to such policies, the act is to be treated as incorporated therein.

"(2) The act extends to all misrepresentations made in obtaining or securing the policy. Whether the act extends to warranties, this case does not require the court to decide.

"(3) A defence based upon section 1 of that act must, in addition to alleging the misrepresentation, allege also that the matter misrepresented actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed is made by the act a question for the jury; hence it is necessary for the defendant to make the averment that the matter misrep-

resented contributed to the contingency or event insured against.

"(4) It is not necessary to the sufficiency of an answer based upon section 1 of the act, that it be alleged that the premiums required to be deposited by section 2 have been actually deposited in court for the plaintiff. This may be done at any time 'at or before the trial.' If not done, the court can deal with the omission in a summary manner."

Subsequently, in Lovell v. Alliance Life Ins. Co. [Case No. 8,552], decided at the same term, Judge Treat held that the statute extended to warranties the same as to representations.

No opinions were written in those cases, and the counsel for the company in the case at bar present the questions anew in this court, whether the statute or the contract fixes the rights of the parties where the two are inconsistent, and whether the statute extends to warranties. These questions we proceed briefly to examine, in the order stated.

1. As bearing upon both of these inquiries, it is essential to ascertain the mischief which this remedial statute was designed to cure, in order that the statute may be construed, so far as its terms will permit, to suppress the mischief and advance the remedy.

Within the last twenty-five years life insurance has attained such a vast growth as to have important public relations. It has become a usual and favorite means for making provisions for the wife and children and creditors of the assured. Life insurance companies are in the nature of savings banks, in which are invested much of the surplus earnings of the people. Universally, the companies, in taking the policies, make it a practice to put a large number of questions to the applicant, touching a great variety of matters, some of which are material, but many of which bear remotely, if at all, upon the real risk assumed. In the policy here in suit, eighty-six questions are answered.

This practice, within proper limits, is not objectionable. But when the answers are obtained, the companies almost universally insert a condition in the policy to the effect that the application is made a part of the policy, and each of the answers a warranty on the part of the assured. The effect of this is that if any one answer, however immaterial to the risk, is not literally true, there can be no recovery, although the assured was honestly mistaken, and had paid his premiums for years, and the mistaken answer in no way related to the cause of the death of the assured. This was bad enough; but in more recent years many of the companies have proceeded further, and in effect have inserted provisions in their policies putting all statements or representations made in effecting an insurance on the footing of warranties, and the courts have felt constrained to uphold the contract as framed. Take, as conspicuous examples, the leading cases of Anderson v. Fitzgerald, 4 H. L. Cas. 484, and Jeffries v. Life Ins. Co., 22 Wall. [89 U. S.] 47.

The policies in these cases contained a provision that if the statements in the application were not true, the policies should be void; and the policies were held void for the false statement of a fact, although it was not material to the risk, and although it was not in terms declared to be a warranty.

The legislature of Missouri conceived, and we think wisely, that the promises held forth to the assured in the policies in general use were but too often a delusion and a snare, and as the courts were powerless to correct the evil, it ought to be corrected by statute. It is stated by counsel that the act of March 23, 1874, was occasioned by the decision of the circuit court in Jeffries' Case, above mentioned; and this is not improbable.

In the light of these considerations, the purpose and meaning of the statute are not to be mistaken. True, the statute is not framed with the utmost care, nor with nice precision in the use of language. If more caution had been taken, it would have contained a clause that all subsequent policies should be subject to its provisions, and also words in terms extending its operation to warranties. And if it had been dictated by a just regard for the rights of the companies, it would have excepted wilful and fraudulent representations from its operation, although it is probable that the courts may hold that such is its true construction.

We are of opinion that policies issued and delivered in Missouri after that act took effect fall within its protective operation; and as to such policies the act is to be treated as if incorporated therein, certainly, unless there is an express provision in the policy to the contrary, if it be competent, indeed, to insert such a provision. Our attention has been called to a late decision of the court of appeals of Kentucky, in which a conclusion is reached that seems to be in conflict with the view above expressed. Farmers', etc., Ins. Co. v. Curry, 10 Chi. Leg. News. 43 [13 Bush, 312]. It is seldom that we feel constrained to differ with the deliberate judgment of that learned and able court, but in this instance we are not convinced by its reasoning. Its conclusion thwarts what appears to us the manifest purpose of the enactment. An exactly opposite conclusion was reached by the supreme court of New Hampshire, under precisely the same kind of an enactment. Chamberlain v. New Hampshire Fire Ins. Co., 55 N. H. 249, 264; Gen. St. N. H. p. 325, c. 157; Emery v. Piscataqua F. & M. Ins. Co., 52 Me. 322.

It is by no means clear that a principle of public policy is not involved in such an enactment as that of the Missouri legislature here in question. If such a statute is founded upon public policy, even an express waiver of its benefits would be inoperative—

as much so as if a borrower should expressly waive the statute against usury, although the statute is intended for his benefit. But, conceding that the statute is not so founded on public policy as that its benefits may not be renounced, still the general rule is that laws in existence are necessarily referred to in all contracts made under such laws, and that no contract can change the law. Such is the general rule. The exception is that where no principle of public policy is concerned, a party is at liberty to waive a statutable provision intended for his benefit. But the intention to waive such benefit ought to be clear. Now, to hold that a party, by merely accepting a policy in the form in use before the statute was adopted (which produced the very mischief aimed at by the legislature), waives the intended protection of the statute, is to defeat the precise end that the legislature had in view. It is to perpetuate the mischief and to nullify the remedy.

2. The second question, viz.: whether the statute of Missouri extends to warranties as well as representations, has given us more difficulty. It will be noticed that the statute does not use the word "representations," but "misrepresentations," and it extends to all such made in "obtaining or securing" the policy.

In view of the quite general provisions of policies to the effect that all declarations and statements, if untrue, shall avoid the policy, whether material or not (see Anderson v. Fitzgerald, supra; Conover v. Massachusetts Ins. Co. [Case No. 3,121], and cases cited; Jeffries v. Life Ins. Co., supra), and whether in terms declared warranties or not, we are of opinion that the evil which the legislature intended to remedy would not be met, if we should restrict the operation of the statute to representations, strictly so called, as distingushed from warranties.

As between warranties and representations, where these were kept distinct, the mischief which was felt grew out of the principles applicable to the former rather than the latter. Indeed, it is the doctrine of warranties, or rather the practice of the companies in requiring such a large number and variety of questions to be answered, and then inserting a condition in the policy that all such answers are warranties, that wrought the most injustice. And we cannot readily suppose that the legislature, in laying the remedial ax to this matter, intended to strike at the comparatively harmless doctrine of representations proper, and to leave the tap-root of the mischief arising out of warranties untouched. They aimed at all statements which they called "misrepresentations made to obtain or secure a policy," and declared what should be the effect of these statements, whether the condition in the policy referring to them called them warranties or representations, or without calling them by either name, compendiously provided that they should, if not true, avoid the policy, whether material or not.

The demurrer to the first four counts in the answer is sustained; and leave given to amend. Judgment accordingly.

NOTE. On the trial the circuit judge, with the concurrence of Judge Krekel, made the following observations to the jury as to the purpose, scope, and meaning of the act of March 23d, 1874:

"The statute was intended to provide a remedy for what was frequently productive of injustice, arising out of the practice of the companies to put to the applicant for insurance a great variety and number of questions, some of which were material, and some of which very remotely bore upon the proposed risk, and then, by a sweeping provision or condition in the policy, declaring that if any one answer was untrue, it should avoid the policy, and the courts had held that such provisions were valid, and that in such case the policy was void, whether the answer which proved to be untrue was material to the risk or not, and whether such answer was intentionally untrue or was the result of an innocent mistake.

"But it still remains true, notwithstanding the statute, that the contract of insurance is eminently one which presupposes and requires good faith, honest representations, and fair conduct on the part of both parties, of the persons who obtain the insurance and the company which grants the insurance. For a comparatively small premium, the company agrees to pay on the contingency of death a large sum of money. This feature of the business of insurance tempts to perpetration of frauds on the companies. It is to the interest of all that fraud should never succeed. It cannot, we think, be supposed that the legislature of Missouri, in the passage of the act of March 23, 1874, intended to give any sanction or protection to fraudulent practises against the companies; but their intention was to extend protection, to the extent therein provided, against the usual conditions in insurance policies, and to extend this protection in favor of persons who had in good faith, and without any fraud on their part or intentional misrepresentation with a view to deceive, effected insurance, by providing that in such cases immaterial representations, or those which proved to be immaterial, should not avoid the policy. It is our opinion, therefore, that the remedial provisions of the statute of March 23, 1874, do not extend to cases where the 'representations made in obtaining or securing the policy' were knowingly false, and made with a view to mislead or deceive the company. As to such representations, the statute does not change the law, and, therefore, if the said John H. White untruly answered in the application that he had never been addicted to the use of alcoholic beverages or opium, and untruly answered that he had not been attended by a physician for a long time, and these answers, or either of them, were known to him to be untrue at the time they were made, and were made to deceive and mislead the company, then the policy is avoided and there can be no recovery thereon, although the matter so untruthfully answered did not contribute to his death. But if these answers in the application were made in good faith—if, when made, the said White supposed they were true, and did not intend to deceive, then, under the statute, the mere fact that they were not true does not defeat the policy; it must be further shown that the matter misrepresented contributed to produce or hasten death."