187   197
191   623

Caroline Keatley, for use of Theodosia S. Nixon, *v.* The Travelers' Insurance Company of Hartford, Conn., Appellant.

*Insurance—Life insurance—Warranty—Statements in application as to health.*

In an action upon a policy of life insurance, it appeared that the deceased had stated in his application that he never had apoplexy, paralysis, or any other " illness " or " local disease," and that to his knowledge there

was not then existing any disorder.or weakness tending to impair his constitution. At the conclusion of a number of answers was the following warranty: "I hereby declare and warrant that every foregoing statement is true without evasion or reservation, to the best of my knowledge or belief." The insured also stated in his application that he had used alcoholic and malt stimulants, but at the date of the application was strictly temperate. It appeared that about three months before the application the insured had an attack of temporary illness, but the evidence was conflicting as to whether it was apoplexy, paralysis or prostration incident to overindulgence in stimulants. He had been told by a physician that if he did not stop drinking he would die. The testimony was conflicting as to whether a physician had told him that his illness was paralysis. There was evidence that prior to the application the insured had suffered from headache, especially after eating, and that there was some irregularity of the heart. *Held*, (1) that the warranty was, not that the statements in the application were absolutely correct, but that the insured had not consciously or wilfully falsified; (2) that the question whether the statements in the application were true, or were believed by the insured to be true, was for the jury; and (3) that, considering that insured might have thought the illness was due to his drinking, which he ·had stopped at the date of the application, the question was for the jury whether it was of a character material to the risk, within the act of June 23, 1885, sec. 1, providing that no false statement, made in good faith by the applicant, shall effect a forfeiture unless it relate to some matter " material to the risk."

*Insurance—Life insurance—Application—Act of June* 23, 1885.

A provision in a policy of life insurance that the policy is to be construed solely by the laws of another state is invalid, as against public policy, in so far as it affects the provisions of the Act of June 23, 1885, P. L. 134, which provides that in warranties to applications for insurance, no misrepresentation or untrue statement made in good faith by the applicant shall effect a forfeiture, or be ground of defense in any suit, unless such misrepresentation or untrue statement relate to some matter material to the risk.

Argued April 20, 1898. Appeal, No. 113, Jan. T., 1898, by defendant, from judgment of C. P. Huntingdon Co., Sept. T., 1897, No. 56, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of life insurance. Before BAILEY, P. J. The facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[Were the answers to interrogatories five and eleven untrue ? If you find that they were, and that Keatley knew them to be

untrue when he made them, and you also find the additional fact that they were material to the risk, there can be no recovery, and your verdict will be for the defendant. If, on the other hand, you find from the evidence that the answers of the assured were true, or that he did not know them to be untrue, and as regards his answers to the fifth and eleventh interrogatories that they were not material to the risk, your verdict should be for the plaintiff. . . . As to the effect of the replies to those two interrogatories five and eleven we submit to you the general question whether they materially affected the risk, and whether Keatley knew at the time they were untrue.] [5]

[We say to you that it is not an absolute but only a conditional warranty; that is, that he warrants the truth of his answers only to the best of his knowledge and belief; and therefore before you can declare this policy void by reason of any incorrect or untrue answer made by the assured, you must find from the evidence that the assured knew at the time the questions were propounded to him that his answers were false and untrue. The assured, Keatley, did not warrant the absolute truth of his answers, but that they were true to the best of his knowledge and belief only.] [6]

Defendant's points and the answers thereto among others were as follows:

1. This action being upon a policy containing a warranty that the answers to questions in the application made by the terms of the policy a part thereof shall be true, and the evidence being conclusive that the applicant made false answers to certain material questions in said application, the construction of the contract is for the court, and not for the jury, and the court is requested to give binding instructions to the jury to find for the defendant, on the ground that said untrue answers constituted a breach of warranty, which avoided the policy. *Answer:* This point is refused. [7]

3. This action being upon a policy containing a warranty that the answers to the questions in the application made by the terms of said policy a part thereof, if the jury find from the evidence that Edmund Keatley, the applicant, made false or untrue answers to any material question therein, whether or not at the time of making said untrue answers, he knew them to be false, such untrue answers constituted a breach of said warranty,

the contract is avoided, and the plaintiff cannot recover. *Answer :* This point is refused. [8]

4. The said Edmund Keatley, plaintiff's assignor, having accepted and assigned the policy in suit, which had thereto attached a copy of said application and warranty, it is immaterial whether or not he signed the medical examination and warranty (being part 2 of said application), because by said acceptance and assignment he ratified and consented to the same, and if the jury find from the evidence that he made untrue answers to any material questions in the same, such untrue answers constitute a breach of said warranty, and avoid the policy from the beginning, and the plaintiff cannot recover. *Answer :* We cannot affirm this point as stated. In our general charge we have instructed the jury that the acceptance by the assured of the policy, with a copy of the application attached, and the payment by him of the premiums, was a ratification of the correctness of the copy of the application. The plaintiff is entitled to recover unless the jury find that the answers were both untrue and that the assured knew them to be untrue at the time and wilfully false, and as to his answers to the fifth and eleventh questions, that they were material to the risk as well as wilfully false. [9]

5. That the parties to the contract in suit have by the terms of said contract made the answers to the questions (among others) "Have you had apoplexy?" "Have you had paralysis?" and the answers to the fifth and eleventh questions in the medical examination (part 2 of the application), material and therefore an untrue or false answer to any of said questions, made by the applicant in his application for said contract of insurance, is a breach of said contract and the plaintiff cannot recover. *Answer :* We cannot affirm this point. For further answer we refer to our general charge. [10]

Verdict and judgment for plaintiff for $1,043.67. Defendant appealed.

*Errors assigned* among others were (4) in not construing the contract by the law of Connecticut; (5–10) above instructions, quoting them.

*K. Allen Lovell,* with him *J. F. Schock,* for appellant.—A phrase that relates to the character of the risk is a warranty :

Burleigh v. Gebhard Fire Ins. Co., 90 N. Y. 220; Carson v. Met. Ins. Co., 1 Pa. Superior Ct. 572; Hartman v. Keystone Ins. Co., 21 Pa. 466.

When a warranty is wholly in writing its construction is a question of law exclusively for the court. It is error to leave its construction to the jury: Bennett v. Ins. Co., 51 Conn. 506; Ward v. Met. Life Ins. Co., 66 Conn. 241; O'Hara v. Aid Society, 134 Pa. 422.

This form of words, "In consideration of the statement in the application made a part of this contract," etc., incorporates the representations of the application into the contract, and makes them express warranties: Richards on Ins. sec. 172; Cushman v. Ins. Co., 63 N. Y. 404; Wood v. Ins. Co., 13 Conn. 533.

*A. O. Furst*, with him *J. D. Dorris*, for appellee.—This warranty of facts is made "to the best of the knowledge and belief of the assured," and it was so construed by the court. It is apparent, therefore, that in the second member of the sentence, "that any untruth or concealment" must be read as follows: "That any such untruth or concealment shall make the policy wholly void," otherwise the warranty would be contradictory in itself, and meaningless: Com. Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 41; Hermany v. Fidelity Mut. Life Assn., 151 Pa. 17.

The evidence upon the question whether or not Mr. Keatley had suffered from an attack of paralysis was one seriously in dispute, and the court was compelled to submit it to the jury: Corcoran v. Life Ins. Co., 183 Pa. 443; Smith v. Life Ins. Co., 183 Pa. 504; Dietz v. Life Ins. Co., 168 Pa. 504; Schwartz v. Ins. Co., 5 Pa. Superior Ct. 285.

OPINION BY MR. JUSTICE DEAN, July 21, 1898:

The defendant, on February 19, 1896, issued a policy in amount of $1,000, on the life of Edmund Keatley, for the benefit of his wife, Caroline Keatley. The first and second annual premiums were duly paid, the latter on the anniversary of the policy, February 19, 1897. On May 19, 1897, the insured died; due proof of death, as required by the policy, was made, but the company refusing to pay the plaintiff brought suit. At the

trial the defendant denied liability under the contract of insurance as evidenced by the policy and application, because the insured had made false answers to the interrogatories put to him by the company's medical examiner. The alleged false answers are to the fourth, fifth and eleventh interrogatories. In the fourth interrogatory to the insured he is asked, " Have you ever had apoplexy?" A. "No." "Paralysis?" "No." Fifth, "Have you ever had any other illness, local disease or personal injury? And if so, of what nature? How long since, and effect on general health?" A. "None." Eleventh, "Is there to your knowledge or belief, now existing, any disorder, infirmity or weakness, tending to impair your constitution, or any fact relating to your physical condition, family history or habits, not already stated?" A. "No." Then follows this warranty : "I hereby declare and warrant that every foregoing statement is true, without evasion or reservation, to the best of my knowledge or belief; that any untruth or concealment shall make this policy wholly void; and that this application shall be part of the policy."

The policy, it will be noticed, is nominally for the benefit of the wife, but in less than a month afterwards she assigned it to her husband who, on May 4, 1896, reassigned it to Theodosia S. Nixon, the use plaintiff, as part security for a loan she had made to him before the policy issued. It is alleged by plaintiff, that this disposition of the policy was intended between the parties when application was made for it, and that it was suggested by Mr. Shumaker, brother of Mrs. Nixon. This is wholly immaterial; Mr. Shumaker had a right to exert himself to secure his sister's loan made through him as her agent, and there is nothing in the evidence which in the slightest degree reflects on his integrity.

There was evidence tending to show that in November, 1895, about three months before his application, the insured had an attack of apoplexy, paralysis or paresis. Drs. Gemmill and Lowry who were called in at the time were of opinion, one, that it was apoplexy; the other, partial paralysis or paresis. Whether their diagnosis was correct is not clear; it is clear that in two or three weeks he apparently had completely recovered. Other physicians who examined him soon after declare, that in their opinion it was improbable he could have had either apoplexy or

paralysis; one of them made an examination with a view to his admission into the Pennsylvania Railroad Relief Association. So there arose, first, a question of fact. When he answered that he had never had apoplexy or paralysis did he tell the truth? The evidence bearing on this question was clearly for the jury.

The next averment of false statement is his answers to the fifth and eleventh interrogatories, which are general. He answered that he had never had any other illness, local disease or personal injury, and that to his knowledge or belief there was not then existing any disorder, infirmity or weakness, tending to impair his constitution. To the sixth interrogatory he answered he had used alcoholic and malt stimulants, but at the date of the application was strictly temperate. These answers, must all be taken together; whether the attack asserted by defendant to be apoplexy or paralysis was either, or was the prostration incident to over indulgence in stimulants, the use of which he disclosed, or whether it was a mere slight temporary illness not worthy of notice, were questions for the jury. There was no warranty, that the statements were absolutely correct. The express words are: " I hereby declare and warrant that every foregoing statement is true, without evasion or reservation, to the best of my knowledge or belief; and that any untruth or concealment shall make this policy wholly void." This warranty comes at the end of the long series of interrogatories and answers, and applies to all of them. It is a warranty that he has not consciously or wilfully falsified. This raises the second question: If either or any one of his answers was not true, did he know it to be untrue when he made it? One of the physicians who attended him at the time of his illness in 1895 says he told the insured that his disease was paralysis; his wife testified that she was present at the interview, heard all that was said, and that the physician did not so inform him. She had no interest in the result of the suit. This, with the other evidence, raised a question of fact which was also for the jury. He was bound to answer truthfully, according to the best of his knowledge or belief.

Another question submitted by the court to the jury related to the answers to the fifth and eleventh interrogatories. These, as before noticed, were general, as to whether he ever had had

any " other illness," local disease or personal injury, or whether
he then had any infirmity or disease tending to impair his con-
stitution.    The " other illness," without doubt, referred to some
other than those specially enumerated in the interrogatories.
Therefore, it is argued, even if the illness in November, 1895,
was neither apoplexy nor paralysis, the insured must have
known it was an illness; and when he answered " no," must
have wilfully falsified.    This did not follow; he stated that he
had been addicted to the use of alcoholic and malt liquors, but
at the date of the application was strictly temperate.    Dr. Lowry,
called by defendant, testifies that he told him at that illness, if
he did not stop drinking he would die.    The insured may well
have believed, that the illness was the result of excess which he
did not conceal in his answer to the sixth interrogatory, and,
therefore, as he had reformed, it was an illness which would
never recur.    If this were so, it clearly was not material to the
risk; whether it was that kind of illness was for the jury.
Whether, aside from this, from the evidence, he at any time in
his former life had any other illness, or had suffered any injury
material to the risk, or at the date of the application had any
infirmity, disease or weakness, and if so, whether the character
of it was material to the risk, were all questions for the jury
under the act of June 23, 1885, the first section of which de-
clares that in warranties to applications for insurance no mis-
representation or untrue statement, made in good faith by the
applicant, shall effect a forfeiture, or be ground of defense in
any suit, unless such misrepresentation or untrue statement
relate to some matter material to the risk.    There was some
evidence that for two years before the application he suffered
from headaches, especially after eating, and that there was some
irregularity of the heart; but even if the jury found these facts
in favor of defendant, it was still for them to determine whether
they were material to the risk.

On all three points to which we have adverted, at the end of
the charge, the court very concisely sums up its instructions
thus : " First. Were the answers of Keatley to the questions
relating to whether he ever had apoplexy or paralysis untrue ;
and if so, did he know at the time of making them that they
were untrue ?    If they were untrue, and he wilfully and falsely
represented them to be true, when he knew them to be untrue,

then the plaintiff cannot recover, and your verdict will be for the defendant. On the other hand, if the answers were true, or if Keatley when he made them believed them to be true, there may be a recovery so far as relates to this branch of the defense. Second. Were the answers to interrogatories five and eleven untrue? If you find that they were, and that Keatley knew them to be untrue when he made them, and you also find the additional fact that they were material to the risk, there can be no recovery, and your verdict will be for the defendant. If, on the other hand, you find from the evidence that the answers of the insured were true, or that he did not know them to be untrue, and as regards his answers to the fifth and eleventh interrogatories that they were not material to the risk, your verdict should be for the plaintiff."

We find no semblance of error in the charge, which disposes of appellant's fifth to tenth assignments of error, inclusive.

The fourth assignment complains of error in the court's construction of the third paragraph to the warranty, as follows: " The policy shall be held as of Connecticut issue, and construed solely by Connecticut laws."

The court construed the contract according to the law of Pennsylvania, and as within the provisions of the act of June 23, 1885. In this construction, the principle announced in Hermany v. Life Insurance Co., 151 Pa. 17, opinion by present chief justice, was strictly followed. In that case the insured agreed to waive the provision of any statute which might affect the contract of insurance. The court below held this stipulation not binding, because contrary to public policy. In affirming this ruling the chief justice says: " The evident purpose of this legislation was to strike down in this class of cases literal warranties, so far as they may be resorted to for the disreputable purpose of enforcing actually immaterial matters. It provides a rule of construction for the purpose of preventing injustice; and it is as much the duty of courts to enforce such rules as it is to administer the statutes of frauds and perjuries. It would be contrary to public policy to recognize the right of parties to circumvent the law by setting up a waiver such as is insisted on in this case."

In the years that have followed that decision nothing has occurred to cause us to doubt its soundness, and we are not in

the least disposed by the facts in this case to depart from it now.

The first, second and third assignments of error are to rulings of the court on offers of evidence. The rulings are manifestly correct. The complaints have so little merit that it is unnecessary to discuss them.

All the assignments of error are overruled, and the judgment is affirmed.