# CONTINENTAL CASUALTY CO. v. OWEN.

No. 3761.   Opinion Filed February 4, 1913.

Rehearing Denied May 6, 1913.

(131 Pac. 1084.)

1.  **TRIAL—Direction of Verdict—Weight of Evidence.** In trials by jury in this jurisdiction, it is only where the facts, although undisputed, are such that all reasonable men' must draw the same conclusion from them that the court is authorized to direct a verdict.

2.  **INSURANCE—Action on Policy—Question for Jury.** Generally the question of the falsity of the statements contained in a life or accident insurance policy, and the intent of the applicant in making them, are for the jury.

3.  **SAME—Evidence.** In an action on an accident insurance policy there was a sharp conflict in the evidence as to whether the insured was suffering from acute or chronic nephritis about 30 days prior to the issuance of the policy. A physician who was called into the case at that time, and who attended the insured until a few days prior to his death from an accidental gunshot wound inflicted about 30 days after the issuance of the policy, testified that he found the insured suffering from an acute attack of nephritis; that he responded readily to treatment for that disease, and within a few days commenced to show marked improvement; that within two or three weeks he was practically restored to health; that "his color was as good and he was as healthy looking as anybody during the latter part of the time I was treating him;" that an examination of the urine and the symptoms indicated that his recovery was complete. **Held,** that whether the insured was suffering from a "defect in the body," within the meaning of that phrase in a statement of the insured indorsed on the policy to the effect that he had no "defect in body," was a question for the jury.

4.  **SAME—False Representations in Application—Burden of Proof.** Under section 3784, Comp. Laws 1909 (Rev. Laws 1910, sec. 6685), statements made in an application for insurance, where the policy was issued without previous medical examination, shall, in the absence of fraud, be deemed representations and not warranties, and in an action upon such policy, where the falsity of such statements is relied upon as a defense, the burden is upon the insurer to show that such statements "are willfully false, fraudulent, or misleading."

5.    SAME—Application — Representations — Statement.    A statute which provides that statements made in an application for insurance shall be deemed representations and not warranties is remedial in its nature, and quite within the police power of the state.

6.    EVIDENCE—Action on Policy—Expert Testimony—Matter in Issue.    Evidence is inadmissible to show that facts suppressed or falsely represented in an application for insurance would have been deemed material by the insurance company, and that the company would not have issued the policy or would have canceled same if issued, had it known the truth in regard thereto, but insurance experts may state the usages of insurance companies generally in respect to charging higher rates or premiums or in rejecting risks or in cancelling policies, if issued, when made aware of the particular facts in question.

7.    APPEAL AND ERROR—Harmless Error—Refusal of Instructions.    It is not reversible error for the trial court to refuse to give an instruction based upon incompetent evidence introduced over the objection of the adverse party, when it does not appear that the party who requested such instruction was deprived of any substantial right thereby.

8.    TRIAL—Action on Policy—Instruction.    Where, in an action on an insurance policy, a requested instruction was correct in so far as it defined the duty of the jury if they found certain facts to exist in relation to statements made by the insured in his application, but was erroneous in stating that such statements were entitled to the status of executory stipulations or promissory warranties, and that a breach thereof rendered the policy void from its inception, whether the thing warranted is material or not, it is properly refused.

9.    INSURANCE—Action on Policy—Evidence—Admissibility.    That part of section 3784, Comp. Laws 1909 (Rev. Laws 1910, sec. 6685), which provides: "In any claim arising under a policy which has been issued in this state by any life insurance company, without previous medical examination or without the knowledge and consent of the insured, or in case said insured is a minor, without the consent of the parent, guardian, or other person having legal custody of said minor, the statements made in the application shall, in the absence of fraud, be deemed representations and not warranties: Provided, however, that the company shall not be debarred from proving as a defense to such claim that said statements are willfully false, fraudulent or misleading, and, provided, further, that every policy which contains a reference to the application of the insured, either as a part of the policy or as having and bearing thereon must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence"—does not prevent proof that state-

ments made in the application are willfully false, fraudulent, or misleading by the introduction of the application in cases where the policy contains no reference thereto either as a part of the policy or as having any bearing thereon.

10. **SAME—Statements in Application—Construction—Indorsement on Policy—Effect.** Under section 3784, Comp. Laws 1909 (Rev. Laws 1910, sec. 6685), statements made by the insured in his application must be construed as representations and not warranties, and this requirement of the statute cannot be evaded by indorsing such statements upon the policy which also contains a provision to the effect that the policy is issued in consideration of such statements, each of which the insured by accepting the policy warrants to be full, complete, and true.

11. **SAME—Policy—What Law Governs.** Where the insured was a resident of this state, where the policy was signed, delivered, and the premiums paid, the policy is an Oklahoma contract and governed by the laws of this state, though the insurer was a foreign corporation, doing business in this state, and the policy was executed at the home office of the company.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by Lula Owen against the Continental Casualty Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*Manton Maverick, M. P. Cornelius,* and *Sharlel, Keaton & Wells,* for plaintiff in error.
*F. E. Riddle,* for defendant in error.

KANE, J. This was an action on an accident insurance policy commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. Upon trial to a jury there was a verdict for the plaintiff, upon which judgment was entered, to reverse which this proceeding in error was commenced. The policy was issued to Edward G. Owen, husband of the plaintiff, on the 10th day of October, 1910. On the 14th day of November of the same year the insured injured his left foot by the accidental discharge of a shotgun, from which injury, two days later, he died.

For convenience, the parties will be called plaintiff and defendant, respectively, as they were designated in the court below, and Edward G. Owen will be called the insured.

The contentions of the defendant are: (1) That the court should have directed a verdict in its favor, for the reason that the evidence showed conclusively that certain statements contained in the application for insurance were material to the risk and were false, and that certain statements contained in a schedule of warranties indorsed on the policy were untrue and false and therefore material to the risk. (2) That the court committed error in giving certain instructions wherein, in effect, it charged the jury that, to defeat the claim of the plaintiff, the burden was upon the defendant to show that the statements contained in the application for insurance of which the defendant complains were false and made with the intent to deceive and defraud defendant, and for the purpose of procuring the insurance. (3) That the court committed error in refusing to give a certain instruction requested by the defendant, to the effect that the statements indorsed on the policy to the effect that the insured would notify the defendant if he applied for insurance in any other company or companies are what are known in law as executory stipulations or promissory warranties, and if they found from the evidence that the insured did not comply therewith, and that if he had, the defendant would have canceled his policy, the verdict should be for the defendant.

It is admitted that the policy was issued upon the application by the insured for insurance, without a previous medical examination. The application contains certain statements concerning the insured, and the policy also has indorsed thereon what is termed a schedule of warranties, statements covering the same information, as follows:

"This policy is issued in consideration of the following statements, each of which the insured by accepting the policy warrants to be full, complete, and true; and in further con-

sideration of the payment of premium as hereinafter provided. * * *

"G.   Except as here stated I have no other accident health insurance in this or any other company. (Give name of company and amount of any other insurance.)   No ex.

"J.   Except as here stated I have not had nor am I now suffering from tuberculosis, rheumatism, paralysis, nor any chronic, periodic, mental or physical ailment or disease, nor have I any defect in hearing, vision, mind, or body.   No ex."

The first contention of defendant is based upon the theory that the evidence conclusively shows that the insured at the time the policy was issued had a defect in body within the meaning of that term as used in statement J indorsed on the policy.   This contention cannot be sustained.   In trial by jury in this jurisdiction, it is only where the facts, although undisputed, are such that all reasonable men must draw the same conclusions from them that the court is authorized to direct a verdict.   *Sans Bois Coal Co. v. Janeway*, 22 Okla. 425, 99 Pac. 153.

Generally the question of the falsity of the statements contained in a life or accident insurance policy and the intent of the applicant in making them is for the jury.   *Kettenbach v. Omaha Life Ass'n*, 49 Neb. 842, 69 N. W. 135; *Royal Arcanum v. Brashears*, 89 Md. 624, 43 Atl. 866; *Henn v. Metropolitan Life Ins. Co.*, 67 N. J. Law, 310, 51 Atl. 689; *Fidelity & Casualty Co. v. Alpert*, 67 Fed. 460, 14 C. C. A. 474; *Peterson v. Des Moines Life Ass'n*, 115 Iowa, 668, 87 N. W. 397; *Globe Mut. Life Ins. Ass'n v. Wagner*, 188 Ill. 133, 58 N. E. 970, 52 L. R. A. 649, 80 Am. St. Rep. 169; *Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70; *Royal Neighbors of America v. Wallace*, 64 Neb. 330, 89 N. W. 758; *Pelican v. Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778.

The undisputed evidence showed the insured to have been suffering from nephritis on the 12th day of September, immediately prior to the issuance of his policy.   There was a

sharp conflict as to whether the disease was chronic or acute,. and there is no serious contention as to the propriety of submitting that question to the jury. As to whether the insured had a defect of body, was also, under the circumstances, a question for the jury. Dr. Corbin, an osteopath, who was called into the case on the day last above mentioned, and who continued to attend the insured until a few days prior to the accident, testified that he found him suffering from an acute attack of nephritis; that he responded readily to treatment for that disorder, and within two or three days commenced to show marked improvement; that within two or three weeks after he commenced his treatment he was practically restored to good health; that his color was "as good as and he was as healthy looking as anybody, during the latter part of the time I was treating him." In answer to the question, "And you state to the court that from your judgment he had fully recovered from this kidney trouble when you quit treating him? A. Yes; the examination of the urine and the symptoms would indicate that the recovery was complete." After Dr. Corbin was called into the case, no other physician attended the insured professionally, except the one who attended him for the gunshot wound of which he died, so his evidence as to the convalescence of his patient and the permanency of the cure effected stands uncontradicted. Even treating the statement of the insured as a warranty, the burden was upon the insurance company to show that it was breached, and we are not prepared to say that it has sustained this burden to the extent that from the evidence adduced all reasonable men must reach the conclusion that the insured had a defect in body at the time this accident was issued.

In *Woodmen v. Prater,* 24 Okla. 214, 103 Pac. 558, 23 L. R. A. (N. S.) 917, 20 Ann. Cas. 287, it was held that:

"The term 'serious illness,' as used in an application for a life insurance policy, means such an illness as perma-

nently or materially impairs, or is likely permanently or materially to impair, the health of the applicant."

After stating in effect that in that case whether the illness of the deceased was a serious illness was a question for the jury, Justice Hayes continues:

"Not every illness is serious. An illness may be alarming at the time, or thought to be serious by the one afflicted, and yet not be serious in the sense of that term as used in insurance contracts. An illness that is temporary in its duration, and entirely passes away, and is not attended, nor likely to be attended, by a permanent or material impairment of the health or constitution, is not a serious illness. It is not sufficient that the illness was thought serious at the time it occurred, or that it might have resulted in permanently impairing the health."

The same may be said as to what constitutes a defect in body. If it had been conclusively shown that, as some of the physicians testified, the insured was suffering from chronic nephritis, which the authorities agree is an incurable disease, it is safe to say that every reasonable man would at once say that he had a defect in body, within the meaning of that term as used in the policy; but where there was evidence to the effect that he was suffering from acute nephritis, a curable disease, about a month prior to the issuance of the policy, from which he had practically recovered at the time the policy was issued, and from which he was completely cured within a week or two thereafter, the question of whether he had a defect in body was properly submitted to the jury.

The instruction given of which the defendant complains was to the effect that the burden is upon the defendant to prove that the statements contained in the application were false and fraudulent and made with the fraudulent intention of deceiving and defrauding the company, and that said company and its managing officers were deceived by said statements and thereby induced to issue the policy. The statement alleged to be untrue was to the effect that the insured had no other

accident or health insurance. Counsel for defendant rely upon *Woodmen v. Prater, supra,* and cases of that class to support their contention. In the Prater case it was held that:

"An applicant for a life insurance policy warranted in her application that her answers to the medical examiner on the reverse side of her application were 'true and accurate,' and that they should constitute the basis for the convenant. The policy cited that it was executed in consideration of the warranties made in the application, and that the application should be made part of the covenant. *Held,* that the answers of the insured to the medical examiner were her warranties, and that a false statement made therein by her rendered the policy void."

That, undoubtedly, was the rule at common law, and it applies to the case from which the above excerpt is taken, for the reason that the policy issued in that case was not one to which the statute hereinafter referred to applies. Whilst from the terms of the statute its scope as to the exact classes of policies it is intended to embrace is not entirely clear, as the parties by common consent seem to agree that it does apply to the policy issued in the case at bar, a general discussion of that question is not necessary.

At common law the warranty of the truth of the answer to a specific inquiry in the application implied the agreement that the subject-matter of the question and answer is to be regarded as material, and that an untrue answer thus warranted avoids the policy, whether the answer be made in good faith or not. *Anderson v. Fitzgerald,* 4 H. L. Cas. 484. Several states, amongst them our own, have passed statutes for the purpose of relieving against the hardships arising from the strict enforcement at common law of warranties in insurance policies concerning matters having no real or proximate relation to the risk assumed by the insurer. By the aid of such warranties, and the innocent mistakes of the insured, it often happened that the insurer was able to escape liability on a ground having no real merit and of the purest technicality. That such statutes are remedial in their nature

and quite within the police power of the Legislature is no longer an open question. *Penn Mutual Life Ins. Co. v. Mechanics' Saving Bank & Trust Co., supra; White v. Conn. Mut. L. Ins. Co.,* 4 Dill. 177, Fed. Cas. No. 17,545; *Equitable L. Assur. Soc. v. Clements,* 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497; *Wall v. Equitable L. Assur. Soc.* (C. C.) 32 Fed. 273; *Eagle Ins. Co. v. Ohio,* 153 U. S. 446, 14 Sup. Ct. 868, 38 L. Ed. 778; *Reilly v. Franklin Ins. Co.,* 43 Wis. 449, 28 Am. Rep. 552; *Insurance Co. v. Leslie,* 47 Ohio St. 409, 24 N. E. 1072, 9 L. R. A. 45. Our statute (section 3784, Comp. Laws 1909; Rev. Laws 1910, sec. 6685), reads as follows:

"In any claim arising under a policy which has been issued in this state by any life insurance company, without previous medical examination or without the knowledge and consent of the insured, or in case said insured is a minor, without the consent of the parent, guardian, or other person having legal custody of said minor, the statements made in the application shall, in the absence of fraud, be deemed representations and not warranties: Provided, however, that the company shall not be debarred from proving as a defense to such claim that said statements are willfully false, fraudulent or misleading, and, provided, further, that every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence."

The evident purpose of this statute is to strike down warranties in insurance policies of this class and to provide a rule of construction for the purpose of preventing injustices. *Hermany v. Fidelity Mut. L. Ass'n,* 151 Pa. 17, 24 Atl. 1064. This is accomplished by giving to the statements contained in an application the status of representations and providing that the insurance company shall not be debarred from proving as a defense that such "statements are willfully false, fraudulent, or misleading."

A leading case in support of the principle that in case of representations, knowledge and good faith of the applicant

are of paramount importance is *Moulor v. American Life Ins. Co.*, 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447. Indeed, it may be said that it is well settled that, to avoid a policy for misrepresentation, the false statement must have been made willfully and with intent to deceive, and must have been relied on by the insurer. *Metropolitan Life Ins. Co. v. Larson*, 85 Ill. App. 143; *Washington Life Ins. Co. v. Haney*, 10 Kan. 525; *Northwest Mut. Life Ins. Co. v. Woods*, 54 Kan. 663, 39 Pac. 189; *Kettenbach v. Omaha Life Ass'n*, supra; *Fitzgerald v. Supreme Council Catholic Mut. Ben. Ass'n*, 39 App. Div. 251, 56 N. Y. Supp. 1005; *Metropolitan Life Ins. Co. v. Howle*, 62 Ohio St. 204, 56 N. E. 908; *Alden v. Supreme Tent of Knights of Maccabees of the World*, 78 App. Div. 18, 79 N. Y. Supp. 89; *Provident Savings Life Assur. Soc. v. Cannon*, 103 Ill. App. 534; *Id.*, 201 Ill. 260, 66 N. E. 388; *Ley v. Metropolitan Life Ins: Co.*, 120 Iowa, 203, 94 N. W. 568.

But for the statute heretofore considered, the provisions of the policy involved herein would render the answer to each question of the application material with all the consequences thereby imposed by the law of insurance, but it was the chief purpose of the statute to destroy such conventional materiality and to open to judicial investigation the question on its merits. The general rule undoubtedly is that under statutes of this kind questions as to the materiality of the statements and the intent of the insured to deceive are for the jury. *Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, supra; *Price v. Standard Life & Accident Ins. Co.*, 90 Minn. 264, 95 N. W. 1118; *Levie v. Metropolitan Life Ins. Co.*, 163 Mass. 117, 39 N. E. 792; *New York Life Ins. Co. v. Fletcher*, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; *March v. Metropolitan Life Ins. Co.*, 186 Pa. 629, 40 Atl. 1100, 65 Am. St. Rep. 887; *Murphy v. Prudential Ins. Co.*, 205 Pa. 444, 55 Atl. 19; *Fidelity Mut. Life Ass'n of Phila., Pa., v. Miller*, 92 Fed. 63, 34 C. C. A. 211.

Under our statute, the statements made in an application for insurance must be shown to be willfully false in order to constitute a defense to an action on the policy. The Pennsylvania statute, which was under consideration in *Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., supra,* provides in effect that any misrepresentation in the application shall not avoid the policy unless it was either made in bad faith or is material to the risk. It was contended that a misrepresentation in bad faith within the meaning of the statute is an untrue statement made under such circumstances that it would, if resulting in injury, support a recovery in an action for deceit at common law, and that in such an action, if the fact misrepresented is one concerning the defendant's own affairs of which he must at some time have had personal knowledge, he is held to a knowledge and recollection of it at the time of the statement, and cannot be heard in defense to say that inadvertently and through forgetfulness he made the statement in the honest belief of its truth. Therefore it is said that the court below should have instructed the jury that, as the insured must have known of the omitted policy when he took it, he is conclusively presumed to have known it when he signed his application, and so to have made the statement concerning his other insurance in bad baith. Judge Taft, who delivered the opinion for the court, said:

"The argument is unsound. We have here to deal with the statutory meaning of the phrase 'misrepresentation in bad faith.' 'In bad faith' is not a technical term used only in actions for deceit. It is an ordinary expression, the meaning of which is not doubtful. It means 'with actual intent to mislead or deceive another.' It refers to a real and actual state of mind capable of both direct and circumstantial proof. A man may testify directly to his knowledge and intention if they are in issue, and they may also be inferred from circumstances. If a man makes a statement in the honest belief that it is true, he does not make that statement in bad faith, even if his honest ignorance of the truth is the result of the grossest carelessness. The fact that he could only be ignorant through gross carelessness may be evidence to show that he was not ignorant, and

therefore spoke in bad faith; but grant his honest belief in his statement, and there cannot be bad faith on his part in the ordinary sense in which those words are used in the English language. This is the sense in which they are used in the Pennsylvania statute. Therefore it would clearly not have been bad faith in the insured if he made the statement concerning his other insurance in the honest belief in its truth, and omitted the $5,000 policy through forgetfulness and inadvertence."

The same may be said of the phrase "willfully false, fraudulent, or misleading," as used in our statute. Statements to be willfully false, fraudulent, or misleading must be made with actual intent to mislead or deceive another. It does not seem to us that the instruction complained of goes further than that.

The instruction requested, of the refusal of which the defendant complains, was submitted for the purpose of covering certain expert evidence introduced by the defendant over the objection of the plaintiff, to the effect that if the insured had notified the defendant of certain applications for additional insurance which it was alleged he made, as by the statements contained in his application he agreed to do, the defendant at once would have canceled the policy sued upon. This evidence was inadmissible and the plaintiff's objection to it should have been sustained. The rule is that:

"An insurance expert cannot be permitted to give his opinion that certain undisclosed facts increased the risk of a life policy, but he may state the usage of insurance companies as to rejecting risks when made aware of such facts." (*Penn Mut. L. Ins. Co. v. Mechanics' Savings Bank & Trust Co., supra.*)

The general rule is stated in 25 Cyc. 937, as follows:

"Evidence is inadmissible to show that facts suppressed or falsely represented in the application would have been deemed material in passing upon the application, and that the company would not have issued the policy, had it known the truth in regard thereto. But insurance experts may state the usage of insurance companies generally in respect to charging higher rates of premiums or in rejecting risks when made aware of the particular fact in question."

It is true the court below permitted this evidence to be introduced over the objection of the plaintiff, and counsel for de-

fendant now contends that, even though it was inadmissible, the plaintiff cannot urge that fact in this court in defense of the action of the trial court for the reason that he has not filed a cross-petition in error for the purpose of reviewing the ruling of the trial court on his objection. We cannot agree with this contention. It would be tantamount to saying that, because the court committed the initial error of admitting such evidence, it is required to still further err by basing an instruction upon it. In our opinion this court would not be justified in reversing a judgment upon that ground. Moreover, that part of the instruction to the effect that the statements made by the insured are what are known in law as executory stipulations or promissory warranties, as defined by the authorities cited by counsel upon that question, is not a correct statement of the law applicable to insurance policies of the class under consideration in this jurisdiction. In *Grant v. Lexington Fire, Life & Marine Ins. Co.,* 5 Ind. 23, 61 Am. Dec. 74, one of the cases cited by counsel for defendant, the court, speaking of an executory stipulation or promissory warranty, says:

"An executory stipulation, or promissiry warranty, inserted in a policy, and which became a binding condition on the insured, requires strict performance. The breach of it, whether the thing warranted was material or not, renders the policy void from its inception."

As stated elsewhere in this opinion, under our statute such statements must be construed as representations, and in order for misrepresentations in relation thereto to avail the insurer as a defense, it must show that they were willfully false, fraudulent, or misleading.

In *Pelican v. Mutual Life Ins. Co., supra,* it was held:

"Where, in an action on a policy, a request to charge was correct in so far as it defined a surgical operation, but was erroneous in assuming that the answers of insured were warranties, and not representations, it was properly refused."

Another question raised by counsel for defendant in error, which also has a bearing upon the question last under discussion, is that the application was not admissible in evidence,

for the reason that a correct copy of the application was not attached to the policy, and therefore under the last proviso of the statute heretofore referred to, should not have been received in evidence.

A statute couched in the same language was construed by the Supreme Judicial Court of Massachusetts in *Holden v. Prudential Life Ins. Co. of America,* 191 Mass. 153, 77 N. E. 309. In that case, as in this, the policy contained no reference to the application of the insured as a part of the policy or as having any bearing thereon. Delivering the opinion of the court, Mr. Chief Justice Knowlton says:

"The plaintiff brought suit upon a policy of life insurance issued to her intestate, and the defendant answered that the policy was procured by fraud practiced upon the company in regard to the risk. It is elementary law that this, if proved, would be a good defense. Proof might be made by showing material false and fraudulent representations, whether oral or in writing, and reliance upon them as an inducement to the issuing of the policy. The defendant offered in evidence a written application of the plaintiff's intestate for insurance, containing representations alleged to be fraudulent. There is no doubt of its competency on this issue, unless the statute prevents the use of it. The statute relied on by the plaintiff is as follows: 'Every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence. * * *' The policy in this case has no reference to any application of the insured, either oral or written. The policy and this application are therefore not within the terms of the statute. The object of the statute is to prevent companies from holding insured persons bound by a contract in writing of which they have no copy. While the language of the statute is broad enough to prevent the use of an application to prove fraud when the policy refers to an application and it is not attached to the policy, there is no reason for extending the statute by construction, so as to make it prevent the proof of fraud by an application, when the policy contains no reference to an application.

It is not the policy of the law to create unnecessary obstacles to the proof of fraud. It has recently been decided that a provision in a policy of insurance, making it incontestable for fraud from its inception, is void as against public policy. *Reagan v. Union Mutual Life Ins. Co.,* 189 Mass. 555, 76 N. E. 217 [2 L. R. A. (N. S.) 821, 109 Am. St. Rep. 659, 4 Ann. Cas. 362]. We are of opinion that this statute does not prevent the proof of fraud by the introduction of an application in writing in cases where no application is referred to in the policy."

As the reasoning of the Massachusetts court is satisfactory, we apply it in construing our statute and hold that part of section 3784, Comp. Laws 1909 (Rev. Laws 1910, sec. 6685), which provides:

"In any claim arising under a policy which has been issued in this state by any life insurance company, without previous medical examination or without the knowledge and consent of the insured, or in case said insured is a minor, without the consent of the parent, guardian, or other person having legal custody of said minor, the statements made in the application shall, in the absence of fraud, be deemed representations and not warranties: Provided, however, that the company shall not be debarred from proving as a defense to such claim that said statements are willfully false, fraudulent or misleading, and, provided, further, that every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence"—

does not prevent proof that statements made in the application are willfully false, fraudulent, or misleading by the introduction of the application in cases where the policy contains no reference thereto either as a part of the policy or as having any bearing thereon.

It is further contended that because some of the statements contained in the application were also indorsed upon the policy, which contains a further provision that the policy is issued in consideration of such statements, each of which the insured, by accepting the policy, warrants to be full, true,

and complete, such statements must be construed to be warranties, and not representations.  We do not believe this contention can be sustained.  This would afford the insurer an easy method to accomplish indirectly what the law will not permit it to do directly.  It has often been attempted without success to evade the effect of such statutes by similar means, usually by stipulations in the policy to the effect that all the statements and declarations of the applicant shall be considered material, notwithstanding the provisions of any statute to the contrary.  The question as to the validity and effect of such stipulations was raised in the early case of *White v. Connecticut Mut. Life Ins. Co.,* 29 Fed. Cas. 1011, where it was held that, if the provisions of the policy are in conflict with the statute, the latter controls, and that no waiver of the benefits of the act could arise by implication.  In *Hermany v. Fidelity Mut. Life Ass'n, supra,* the statute was held to be of binding effect, though the application expressly provided that every statement therein should be material, notwithstanding any law to the contrary.  In *Fidelity Mut. Life Ass'n v. Miller, supra,* involving the construction of the Maryland statute, the court held that the company could not contract with the insured that matters ordinarily regarded as immaterial should be construed as material.

In *Keatley v. Insurance Co.,* 187 Pa. 197, 40 Atl. 808, where it was attempted to evade the provisions of the Pennsylvania act by reciting in the policy that the contract should be construed by the laws of Connecticut, the court held that such an agreement was against public policy, and that the contract must be governed by the Pennsylvania act.  This doctrine was approved in *McClain v. Provident Savings Life Assurance Society,* 110 Fed. 80, 49 C. C. A. 31.  In *Dolan v. Mutual Reserve Fund Life Ass'n,* 173 Mass. 197, 53 N. E. 398, the court held that where parties are contracting within the commonwealth in regard to a matter which without their contract would plainly be governed by the laws of the state, enacted on grounds of public policy, it is at least

doubtful whether they can be permitted to nullify those laws by a stipulation that the contract shall be governed by the laws of another state. To the same effect are *Insurance Co. v. Sickles,* 23 Ohio Cir. Ct. R. 594; *Fidelity Mut. Life Ass'n v. Jeffords,* 107 Fed. 402, 46 C. C. A. 377, 53 L. R. A. 193, and *Fletcher v. New York Life Ins. Co.* (C. C.) 13 Fed. 526. In *Equitable Life Assurance Soc. v. Clements, supra,* affirming *Wall v. Equitable Life Assur. Soc.* (C. C.) 32 Fed. 273, it was held that where the insured was a resident of Missouri, and the application for the policy was signed there, the policy being delivered and the premiums paid in Missouri, the policy is a Missouri contract and governed by the laws of that state, though the insurer was a New York corporation doing business in Missouri, and the policies were executed in New York. To the same effect are *Lovell v. Alliance Life Ins. Co.,* 15 Fed. Cas. 1000, and *Fidelity Mut. Life Ass'n v. Jeffords,* 107 Fed. 402, 46 C. C. A. 377, 53 L. R. A. 193.

Finding no reversible error in the record, the judgment of the court below is affirmed.

All the Justices concur.